(No. 11160.—Judgment reversed.)

THE AURORA BREWING COMPANY, Plaintiff in Error, *vs.*
THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants
in Error.

*Opinion filed February 21, 1917.*

1. WORKMEN'S COMPENSATION—*meaning of the word "casual,"
as used in section 5 of Workmen's Compensation act.* The word
"casual," as used in section 5 of the Workmen's Compensation act
in regard to casual employment, means "occasional," "irregular" or
"incidental," as distinguished from stated or regular, and the word
"or," immediately following, cannot be construed to mean "and,"
as the context does not require such meaning.

2. SAME—*what is a casual employment as intended by section 5
of the Workmen's.Compensation act.* A plasterer engaged by the
owner of a building for one job lasting only three or four days,
although he had been employed by the same owner at irregular in-
tervals during several previous years to perform similar jobs, is
engaged in a casual employment as intended by section 5 of the
Workmen's Compensation act, and his personal representative can
not recover under such act for his death from accidental injury
while so employed.

3. SAME—*when question of construction of Workmen's Com-
pensation act is not waived by stipulation and need not be formally
pleaded before Industrial Board.* Where the question of the mean-
ing of a provision of the Workmen's Compensation act is discussed
at length before the Industrial Board and passed upon by it such
question is not waived in the trial court by a stipulation that the
parties are both under the terms of the act, nor is it necessary that
such question has been raised in a formal pleading on the hearing
before the board before it can be raised on review. (*Victor Chem-
ical Works* v. *Industrial Board,* 274 Ill. 11, distinguished.)

4. STATUTES—*statutes are to be construed according to inten-
tion expressed therein.* A statute should receive a liberal but rea-
sonable construction in order to carry out its purpose and objects
according to the spirit of the act, but the court should not give it
a construction clearly outside of the legislative intention.

DUNCAN, J., dissenting.

WRIT OF ERROR to the Circuit Court of Kane county;
the Hon. MAZZINI SLUSSER, Judge, presiding.

J. C. MURPHY, and E. L. LYON, for plaintiff in error.

SEARS & SOLFISBURG, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Katherine Mack, widow of Gottlieb Mack, deceased, filed her petition with the Industrial Board of Illinois to recover under the Workmen's Compensation act for the death of her husband, killed by an accident which happened June 10, 1914, while working for plaintiff in error. The committee of arbitration made a finding in her favor, and on review the Industrial Board also found in her favor, changing the finding in some particulars. Thereafter a writ of *certiorari* was sued out of the circuit court of Kane county, where the finding of the Industrial Board was affirmed. The circuit court certified that the case was one that should be reviewed by this court, and it was brought here for review.

Gottlieb Mack, a mason and plasterer, residing in Aurora, in this State, was employed by plaintiff in error, the Aurora Brewing Company, to plaster the ceiling of a room in the building which said company was erecting as an addition to its bottling shop. While engaged in plastering this ceiling Mack was standing on a ladder placed on a scaffold. The ladder slipped and he fell, breaking his back, and died from the effects of the accident within forty-eight hours thereafter. At the time he was injured he had worked about three days and had practically finished the job. He was being given credit for his work on a bill he owed the company. There were no other plasterers on the job and the company furnished his helper. He was working for four dollars a day, which price was agreed on between the plaintiff in error's superintendent and himself after he had begun the work. He had worked for the brewing company in previous years,—once for a month and at other times for shorter periods,—but this was his first work for it during 1914. He was a regular plasterer and was kept busy at his

work. It is clear from the record that the agreement as to the job and the price to be paid for it only had to do with this one job and had no relation to any other work in the past or future, both parties to the contract being left free to make such arrangements for any work in the future as they saw fit. There is nothing in this contract that tended to give the deceased any right to expect that he would be employed again by plaintiff in error, though he might naturally think that he might be so employed from the fact that he had been given various jobs at odd times by the company during previous years.

Counsel for plaintiff in error insist that Mack's employment at the time he was injured was "but casual," and also that he was not engaged "in the usual course of the trade, business, profession or occupation of his employer," and that for both of these reasons no recovery can be had for his injury. Section 5 of the Workmen's Compensation act, as it read when this injury occurred and still reads, is, in part, as follows: "The term 'employee' as used in this act shall be construed to mean * * * every person in the service of another under any contract of hire, express or implied, oral or written, * * * but not including any person whose employment is but casual or who is not engaged in the usual course of the trade, business, profession or occupation of his employer." (Hurd's Stat. 1916, p. 1274.)

What is meant by "casual" employment, as that term is used in the statute? The lexicographers define "casual" as meaning, among other things, "Occurring by chance or accident or without design; accidental; unexpected;" or, "Occurring at irregular intervals; occasionally;" or, "Coming without regularity; incidental;" or, "Uncertain; haphazard." (New Standard Dict.; Webster's New Int. Dict.) In giving the definition of the word "casual" the Century Dictionary says that it is applied to "a person who receives relief and shelter for one night, at the most, in the

workhouse or police station, or who receives treatment in a hospital for an accidental injury;" or, "A laborer or an artisan employed only irregularly." It is difficult, under these definitions, to lay down a general rule which will show, clearly, just where to draw the line between employments that are casual and those that are not. It would seem, however, that the legislature intended the word "casual" to be used as meaning "occasional," "irregular" or "incidental," in contradistinction from stated or regular. Each case, however, must be decided quite largely upon its special facts.

This court has not heretofore had occasion to construe the statute as to the meaning of this word. The decisions in other jurisdictions may be persuasive but are not necessarily decisive. The wording of the statute in some jurisdictions is very similar to our own on this question, while in others it differs materially, so that the force and effect of these holdings will depend, somewhat, upon the wording of the statute. The British act, which was enacted previous to our own and other statutes in this country, reads: "That 'workman' does not include any person whose employment is of a casual nature and who is employed otherwise than for the purpose of the employer's trade or business." It seems quite clear that the British act is broader in scope than our own on this question. The workman under the British act can recover, even though his employment is of a casual nature, if his employment is for the purpose of the employer's trade or business, while under our act the two clauses are joined by the disjunctive "or," so that a workman cannot recover if his employment is casual. Neither can he recover if he is not engaged in the usual course of the trade, etc., of his employer. The word "or," in our judgment, cannot be understood, in the Illinois act, as meaning "and," as has been suggested. The word should not be given any but its ordinary meaning unless the context and the principal purpose to be accomplished by all the words .

used seem to demand it. Such is not the case here. Under practically the same wording of the Massachusetts act the highest court of that State has held that the word "or" could not be construed as meaning "and." (*In re Gaynor,* 104 N. E. Rep. 339; Harper on Workmen's Compensation, sec. 114.) It was pointed out in the opinion in the Massachusetts case just cited that the British act does not exempt the workman whose employment is but "casual" but only one whose employment is "of a casual nature," the opinion stating (p. 340): "The phrase of our act tends to indicate that the contract for service is the thing to be analyzed in order to determine whether it be casual, while in the English act the nature of the service rendered is the decisive test." That distinction applies with full force to the wording of the Illinois act as compared with the British act.

In *Hill* v. *Begg,* 1 B. W. C. C. 320, it was stated that the British act intended that the liability should be limited to employees whose employment was not casual but stable. In *Rennie* v. *Reid,* 1 B. W. C. C. 324, the employment of a window cleaner at irregular intervals to clean windows of a dwelling house, although he may have been doing that work at intervals for a period of some years, was held to be a casual employment. In *McCarthy* v. *Norcott,* 2 B. W. C. C. 279, it was stated that the meaning of "casual employment" might best be arrived at by considering its opposite. In *Tombs* v. *Bomford,* (1912) 5 B. W. C. C. 338, a laborer owned a small garden surrounded by a hedge and land belonging to a farmer. He asked the farmer that the hedge be cut, as it had grown so high that it cast a shade across his garden. The farmer, being too busy, told the man to cut it himself and that he would pay him therefor. The long wood from the hedge was to be used for hop-poles for the farmer. The man injured his eye while cutting the hedge. The court found that while the employment was of a casual nature, still it was for the purpose of the farmer's

trade or business, and awarded compensation. In *Dewhurst* v. *Mather*, (1908) 1 B. W. C. C. 328, a woman employed to work at a particular house on Friday of every week and on alternating Tuesdays was injured while at such work. It was held that the employment was not of a casual nature and that she was entitled to recover. In *McCarthy* v. *Norcott, supra,* a carpenter was employed to make repairs to a private house and after these repairs were made was engaged to cut down some trees in the grounds near the house. While thus engaged he was killed, and it was held that the employment was of but a casual nature and compensation was refused. In *Scott* v. *Payne Bros.* 85 N. J. L. 446, a man was employed for an indefinite period at five dollars per day to work under contract on the erection of a structural steel building. He had been working a week when he was injured. It was held that it was not a casual employment. In *Schaeffer* v. *DeGrotola,* 85 N. J. L. 444, a workman was employed to shave skins at so much per dozen. It was held that as the evidence showed that the intent was to give employment at piecework in the defendant's regular business, without limit as to time, such employment was not casual. In *Sabella* v. *Brazileiro,* 6 Neg. & Comp. Cas. Ann. (N. J.) 958, the deceased was a longshoreman who had frequently been employed by his employer to assist in loading and unloading ships. All longshoremen in that work were paid by the hour. The deceased was set to work by the employer's foreman to load a certain ship, and the accident which caused his death happened two hours after he began work. The evidence justified the conclusion that his employment would at least continue until the ship was loaded. While this class of work was not constant, depending upon there being a ship in port, it appears that deceased was frequently called upon to serve his employer in this particular character of work, being one of a class of stevedores ready to respond when called upon. The court said: "The ordinary meaning of the word 'cas-

ual' is something which happens by chance, and an employment is not casual,—that is, arising through accident or chance,—where one is employed to do a particular part of a service recurring somewhat regularly, with the fair expectation of its continuance for a reasonable period." This case has in a note a score or more of cases bearing on this question which may be referred to for other examples.

*In re Gaynor, supra,* was a case in which the employer, a regular caterer, was engaged to serve a banquet at Mt. Holyoke College, and on the day before it was to be served a workman was employed as a waiter at the banquet, the contract being to pay him four dollars for such service, together with transportation from Boston to South Hadley and return. Shortly after reaching South Hadley, while he was working in preparing this banquet, he was injured. He had never been employed before by that caterer. The custom of the catering business was that such banquets were served by waiters secured for each particular occasion. It was held that this employment was casual and there could be no recovery. In the case of *In re Cheevers,* 106 N. E. Rep. (Mass.) 861, one Pierce owned a coal yard in Pittsfield where he did a retail coal business, and at different times in 1911, 1912 and 1913 he employed Cheevers, who conducted a teaming business in that city with three or four separate horses and teams, to deliver coal with Cheevers' wagon. The course of business was for Cheevers to come to the yard with his wagon, put the coal into bags and lift them into his wagon or fill his wagon in bulk from the chute, being usually helped in doing this by one of Pierce's employees, this helper being paid by Pierce. Cheevers was paid five dollars a day for himself and team and was hired for this general work for no fixed duration of time and for no specified job. When he had work he wished to do Pierce would say to Cheevers, "I want you to come up and help me." Cheevers worked the same as any other of Pierce's regular men, under his orders, loading, driving and putting

in coal.  The court held that Cheevers' employment was but casual and that there could be no recovery for an injury he received while so working for Pierce.  It was there said (p. 862) :  "The scheme created by the Workmen's Compensation act is a scheme of insurance in which the premiums to be paid by the employer are based upon the wages paid by him to his employees.  It may have been thought impracticable to work out a scheme of insurance if persons who are only occasionally employed are to be included among those insured."  For other illustrative cases see Boyd on Workmen's Compensation act, sec. 440, and 1 Bradbury on Workmen's Compensation, (2d ed.) 135-142.

It would seem that under the usual and ordinary use of the word "casual," as well as by the reasoning of the authorities most nearly analogous, in facts, to this case, the deceased was engaged in a casual employment at the time of the injury.  While he had been employed by plaintiff in error at different times in former years, his employment could not be characterized as permanent or even periodically regular.  It was a matter of special engagement for each particular time.  He could not have complained if some other person had been employed to do this work of plastering in his stead or if at the time of the engagement some other plasterer had been employed to do a part of the work.  The arrangement for his work for plaintiff in error at this time and previously was not such as would connect him with the work of the plaintiff in error in its regular work as a regular employee.  Of course, this statute should receive a liberal construction in order to carry out its purpose and objects, but the court should not give it a construction clearly outside of the legislative intention.  If workmen employed only "occasionally," "irregularly," "incidentally" or "casually" ought to come under the provisions of the Workmen's Compensation act as well as those who are employed continuously or at stated or regular intervals, that is a ques-

tion for the legislature and not for the courts. Our duty is only to construe the statute as we find it and give it a reasonable construction according to its spirit. In our judgment the legislature never intended an employee who was engaged for one job lasting only three or four days to be within the terms of the act, even though the same employee had been employed at irregular intervals during several previous years to perform similar jobs. This being so, there can be no recovery, under the statute, for his injury.

The conclusion reached on the question of casual employment renders it unnecessary for us to consider whether the deceased was engaged, at the time of his injury, in working in the usual course of the trade, business, profession or occupation of his employer, and also whether the judgment of the trial court was not entered in proper form, as is insisted by counsel for plaintiff in error.

Counsel for defendant in error suggest, if they do not insist, that plaintiff in error waived in the trial court the right to raise the question which we have here discussed, by agreeing in the stipulation of facts that both the applicant and the respondent were working under and subject to the Workmen's Compensation act of Illinois. We think it is clear that this stipulation was not intended to cover the question here passed upon, as that question was discussed at length before the Industrial Board and passed on squarely by it. Neither do we think that under the holding in *Victor Chemical Works* v. *Industrial Board,* 274 Ill. 11, it was necessary for the plaintiff in error to raise this question in a formal pleading on the hearing before the Industrial Board. That case only decides that if a question is not raised on the hearing before the Industrial Board or before the arbitrators it cannot be raised afterwards on review. That is not the situation here.

The Industrial Board erred in holding that recovery could be had under the Workmen's Compensation act for

the injury to the deceased, as did also the circuit court. The judgment of the circuit court is therefore reversed.

*Judgment reversed.*

Mr. JUSTICE DUNCAN, dissenting.