UTAH COPPER CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 3474.   Decided October 22, 1920.   (193 Pac. 24.)

1.  MASTER AND SERVANT—PETITION SUFFICIENT TO SUPPORT AWARD TO DEPENDENTS WITHIN WORKMEN'S COMPENSATION ACT. A petition by an employé's widow in her own right and as guardian of her minor children, dependents within Workmen's Compensation Act (Comp. Laws 1917, section 3140), stating the death of her husband by accident arising out of and in the course of his employment, the daily wage, and the names, ages, and relationship of the dependents, is sufficient to support an award by the Industrial Commission.

2.  MASTER AD SERVANT—INDUSTRIAL COMMISSION MAY EXERCISE POWERS INCIDENT TO THOSE GRANTED BY WORKMEN'S COMPENSATION ACT. Though courts cannot by construction legislate and give to the Industrial Commission powers not granted by the Workmen's Compensation Act, grant of a specific power in furtherance of the legislative purpose apparent from the entire act will authorize the use and exercise of such incidental powers as are necessary to accomplish the object sought by the legislation.

3.  MASTER AND SERVANT—INDUSTRIAL COMMISSION'S JURISDICTION OVER SELF-INSURERS IMPLIED BY WORKMEN'S COMPENSATION ACT. Though there is no express provision in the Workmen's Compensation Act giving the Industrial Commission jurisdiction over self-insurers, the right to exercise such jurisdiction and

to make an award against such an insurer is clearly implied as necessary and incident to the exercise of the other powers granted, and complies with the duty imposed by the other provisions of the act.

4.  EVIDENCE—WASTEFUL TENDENCY OF PAYING AWARD IN LUMP SUM TO DEPENDENTS OF INJURED EMPLOYÉ A MATTER OF COMMON KNOWLEDGE. It is a matter of common knowledge that, in a great many cases, it would be an unreasonable waste to pay the entire amount of an award of compensation to the dependents of an injured employé in a lump sum.

5.  MASTER AND SERVANT—FARMER REPAIRING CANAL FOR MINING COMPANY HELD AN "EMPLOYÉ," NOT ONE IN CASUAL EMPLOYMENT, WITHIN WORKMEN'S COMPENSATION ACT. A farmer employed by a copper mining company to make repairs on a canal conducting water used for irrigation and watering stock, and also for the usual and regular business of mining and milling the company's ores, *held* an "employé," within the Workmen's Compensation Act (Comp. Laws 1917, section 3111), and not a mere "casual employé."

6.  STATUTES—RULE LIMITING EFFECT OF ENUMERATION OF POWERS FOLLOWING GENERAL GRANT YIELDS TO INTENT. In the interpretation of statutes, it is a rule of construction that words granting general powers are limited to powers enumerated, if such enumeration immediately follows the general grant, and the powers enumerated relate to the same subject, a rule which is merely one of construction, and yields to the legislative intent if it can be rationally determined.

7.  MASTER AND SERVANT—INDUSTRIAL COMMISSION MAY DELEGATE TO DEPUTY POWER UNDER WORKMEN'S COMPENSATION ACT TO TAKE TESTIMONY. Under the Workmen's Compensation Act (Comp. Laws 1917, sections 3079, 3100, 3130, 3148, 3149), the Industrial Commission has authority to delegate to a deputy, as a referee, power to take testimony in support of or against the application of one asking relief before the commission; the power to take testimony necessarily carrying authority to administer oaths.

8.  CONSTITUTIONAL LAW—MASTER AND SERVANT—AWARD TO WIDOW PETITIONING UNDER WORKMEN'S COMPENSATION ACT, BINDING AND VALID AS TO MINOR HEIRS AND UNBORN CHILD. Under Comp. Laws 1917, sections 3127, 7832, 3140, 6340, 6426, 7799, 7809, despite Const. art. 16, section 5, providing that right of action for death shall never be abridged, the minor heirs of deceased

employé, and an unborn child are bound by the award on the widow's petition for compensation for her own benefit and for the benefit of the heirs, she having been appointed guardian of the minors and unborn child, and the award is not invalid as possibly exposing the employer to a double liability and resulting in the taking of property without due process of law and denial of the equal protection of the law, in violation of the federal and state Constitutions.

Appeal from District Court, Third District, Salt Lake County; *P. C. Evans,* Judge.

Proceedings by Julia C. Rushton for compensation for the death of Louis J. Rushton, the employé, opposed by the Utah Copper Company, the employer. Compensation was awarded by the Industrial Commission, the award affirmed by the district court, and the employer appeals.

JUDGMENT UPHOLDING AWARD AFFIRMED.

*Dickson, Ellis, Lucas & Adamson,* of Salt Lake City, for appellant.

*Dan B. Shields,* Atty. Gen., and *James H. Wolfe, Oliver C. Dalby, Herbert Van Dam, Jr.,* and *Delbert M. Draper,* Asst. Attys. Gen., for respondents.

GIDEON, J.

Louis J. Rushton, a resident of Salt Lake county, died on January 2, 1919, as the result of an accidental injury received while in the employ of appellant. He left as his dependents his widow and nine minor children, the oldest being thirteen years of age. He also left one unborn child. The nature of the work and the facts concerning the employment of the deceased will be discussed during the course of this opinion. By so discussing, the application of the facts to the conclusions reached will be more readily understood.

The widow, Julia C. Rushton, in her own right and as

guardian of the minor children, petitioned the Industrial Commission for compensation for the death of her husband. The company answered her petition. Subsequently, on May 6, 1919, the commission made an award. An appeal was taken by the company to the district court of Salt Lake county. That court affirmed the award, and the company, by appeal, now brings the entire record to this court for review.

Numerous errors are assigned and relied on by appellant as grounds for a reversal of the award made by the commission. We shall attempt, in the course of the opinion, to review the objections thus made.

It is conceded by appellant that in the light of the authorities the underlying principles of the Workmen's Compensation act (Comp. Laws 1917, sections 3061-3165) do not conflict with any constitutional rights. *N. Y. Cent. R. R. Co.* v. *White,* 243 U. S. 199, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A, 1917D, 1, Ann. Cas. 1917D, 629; *Hawkins* v. *Bleakly,* 243 U. S. 210, 37 Sup. Ct. 255, 61 L. Ed. 678, Ann. Cas. 1917D, 637; *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 37 Sup. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642; *Arizona Employers' Liability Cases,* 250 U. S. 400, 39 Sup. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537; *Retcuna* v. *Ind. Com.,* 55 Utah 258, 185 Pac. 535. It cannot be fairly claimed that the provisions of the act are in conflict with natural justice. The objections against upholding the award in question therefore relate principally to the jurisdiction of the commission over the parties and the subject-matter and the procedure by which it is claimed such jurisdiction was acquired.

It is claimed that in the application or administration of certain provisions of the act in controversy the Constitution of the state has been violated, and that the effect of the award in this proceeding amounts to taking property without due process of law. The question, or questions, therefore, presented for determination must be decided upon whether or not jurisdiction is given the commission under the facts in this particular case, to make any award, and if that be granted whether the commission has followed the

procedure prescribed by the act, and whether that procedure in any way conflicts with the state Constitution.

In addition to the claim made that the employment of deceased was such that the commission had no jurisdiction over the case, it is further urged by appellant (and such may be designated the dominant objection) in support of its numerous assignments of error that the award, based as it must be, upon the proceedings leading up to the same, does not relieve appellant from any future liability to the minor heirs of the deceased should it be determined in proceedings instituted by such heirs, or by one representing them, that the death was caused by the negligence of the appellant company.

Counsel for appellant has prefaced his very able and extensive argument by reminding the court that the Industrial Commission is a mere creature of statute, and exercises only ministerial and administrative duties, and has no judicial power; also that the commission does not have exclusive or final authority to determine what matters come within its jurisdiction, and that such is a judicial question, which the courts must finally determine; that for that purpose courts should and will review the evidence and findings to determine the jurisdiction of the commission in any particular case. This court has held that the Industrial Commission is an administrative body, and also that the court will review the record, at least to the extent of determining whether there is any evidence to support the commission's findings. *Industrial Com.* v. *Evans,* 52 Utah 394, 174 Pac. 825; *Garfield Smelting Co.* v. *Industrial Commission,* 53 Utah 133, 178 Pac. 57.

Error is assigned on the alleged ground that the petition filed with the Industrial Commission by the widow and guardian is insufficient to support an award. In other words, it is urged that the petition does not state facts sufficient to entitle petitioner to any relief against appellant. On the other hand, it is contended by the Attorney General that any application that will set the machinery of the commission in motion is sufficient.

Appeal from Third District

Assuming, without so holding, that the commission was without jurisdiction to grant petitioner any relief or to make an award unless the petition contains sufficient facts to support an award, it remains nevertheless, to be determined whether the petition in this case is sufficient to support the award made.

It appears from the application filed with the commission that the deceased, Louis J. Rushton, was killed by an accident arising out of and in the course of his employment by the appellant, here, defendant in the proceedings before the commission; that the petitioner is the widow of the deceased and the guardian by judicial appointment of his minor children. The daily wage received by the deceased at the time of the injury resulting in death is also stated. The petition contains the names of the minor children and their ages. The widow and minor children are, by the provisions of Comp. Laws Utah 1917, section 3140, presumed to be dependents of the deceased. We have here, then, an application or petition stating the death by accident, the employment by appellant, the daily wage, and the names, ages, and relationship of the dependents. The necessary elements to entitle the appellant to an award, hence the necessary facts to give the commission jurisdiction to make the award, are found in the petition.

We remark that doubtless the blank forms used by the commission could easily be changed so as to include such additional information as would relieve the petition from the criticism made by appellant.

The appellant is what is known as a self-insurer. It is therefore insisted that the commission has no jurisdiction to make an award against it as such self-insurer. It is argued in support of this contention that the commission, being purely an administrative body, has only such power and authority as have been conferred upon it by express grant or as arise by implication as necessary and incidental to the full exercise of the powers expressly granted, and that courts will not, by construction, authorize the exercise of additional powers. It is doubtless true that courts cannot, by construc-

tion, legislate and give to the commission powers not granted by the act, but it is equally well settled that the grant of a specific power in furtherance of the purpose of the Legislature, such purpose being apparent from the entire act, will authorize the use and exercise of such incidental powers as are necessary to accomplish the object sought by the legislation.

The recent history of the enactment of the law in question justifies the court in saying that the recognized and known intent of the Legislature was to secure compensation to injured employés, or to their dependents in case of death, whether such injury or death resulted from the negligence of the employer or was purely accidental. Also, it was the intent to secure such compensation without delay and without the expense and annoyance of a suit at law. An administrative body, to wit, the commission, was created primarily to enable injured employés or dependents of such employés when death ensues to obtain such relief without delay, and without having to resort to the uncertainties and expense of litigation.

Comp. Laws Utah, 1917, section 3114, provides the method of securing such compensation. Three methods are enumerated: (1) By insuring in the state insurance fund; (2) by insuring in a stock or mutual association authorized to transact the business of workmen's compensation insurance in this state; and (3) by self-insurance upon "furnishing to the commission satisfactory proof of financial ability to pay direct the compensation in the amount and manner and when due as provided for in this title."

By section 3115 the employer insuring in a stock or mutual association is required to file with the commission, in the form prescribed by it, notice of his insurance, together with the contract or policy of insurance. Section 3116 provides that the policy of insurance shall cover the liability of the employer for compensation, whether issued by the commission or by a stock company, and also contain a provision setting forth the right of the employé to enforce in his own name the liability of the insurance carrier in whole or in part

for the payment of such compensation by filing a separate claim, or by at any time making the insurance carrier a party to the original claim. Section 3117 provides that every policy shall contain a provision that notice to or knowledge of the injury on the part of the employer shall be notice to or knowledge on the part of the insurance carrier; that jurisdiction of the employer for the purpose of this title shall be jurisdiction of the insurance carrier, and that the insurance carrier shall in all things be bound and subject to the awards, findings and decisions awarded against the employer for the payment of compensation under the provisions of this title. Section 3138 enumerates the rate, time, and schedule of partial-disability. Section 3140 prescribes the benefits in case of death, and designates the amounts and persons to whom the benefits shall be paid. Section 3141 gives the commission authority to determine the apportionment of the benefits among the dependents in such manner as it may deem just and equitable. Section 3143 provides that if it is established that an injured employé was of such age and experience that under natural conditions his earnings would be expected to increase, evidence may be considered in arriving at his average weekly wage. Section 3144 provides that the powers and jurisdiction of the commission over such case shall be continuing, and it may from time to time make such modifications or changes with respect to former findings and orders as in its opinion may be justified. Section 3145 provides that the commission may, under special circumstances when it deems it advisable, commute periodical benefits to one or more lump sum payments.

It will thus be seen that the commission not only has the power, but it is charged with the duty, of determining the dependency, as well as the amount of weekly payments in case of partial dependency, the length of time that the payments shall continue, and the amount of the same, not to exceed the maximum fixed by statute.

While it may be true that no express provision is found in the act giving the commission jurisdiction over self-insurers, the right to exercise such jurisdiction, in our judg-

ment, is clearly implied as necessary and incident to the exercise of the other powers granted and compliance with the duty imposed by the other provisions of the act. To hold otherwise would be to run contrary to the entire spirit and purpose of the law.

Society is interested in seeing that industries bear the expense of caring for those injured while working in such industries, as well as in seeing that the dependents of workmen losing their lives in such industries shall be protected and given at least some of the comforts of which they are deprived by the death of the provider. The Legislature wisely gave to the commission some discretion as to the time of payment and the application of the same to the support of the different dependents. It is a matter of common knowledge and human experience that in a great many cases it would be unreasonable waste to pay the entire amount of an award in a lump sum, and it would be criminal neglect to fail to see to it that the award, when paid, is used for the support of the minor children, left defenseless by the death of the father. The mother, often without business experience or any knowledge of financial affairs, would too frequently become the victim of unscrupulous, or, possibly, too optimistic promoters, and in a few short months the money awarded for the protection of the children of the deceased would, if released from the control of the commission, be invested in worthless securities. To defend against such losses the commission retains control of the award, and may direct its distribution among the dependents in such manner as it may deem just and equitable.

To hold that the commission is without jurisdiction to make an award against a self-insurer would be to make the law discriminatory, and would leave the injured employé of a self-insurer, or his dependents in case of death, largely at the mercy of the employer. In the event of failure to agree between the employer and the employé no relief could be had without resort to litigation. On the other hand in the case of an employer insured by or through the state, the commission undoubtedly has the power to fix the amount and direct

Appeal from Third District

payment, and the same is true in case of an employer insured by a stock or mutual association. It would likewise be discriminatory against the insurer himself, and might subject him to litigation in the event that the injured employés or dependents were disposed to exact a greater amount than they would be entitled to under the act, from which annoyance or litigation the insurer in the state fund or by a stock or mutual insurance company would be relieved.

The answer of appellant to the Attorney General's query as to what the parties could do if they failed to agree is that the courts are open and are bound to protect any right that the dependents or partial dependents may have. Avoiding litigation is among the prime objects sought and intended to be accomplished by the enactment. The commission was created largely for that very purpose. The privilege of permitting any employer to become a self-insurer was not given for the benefit of the employé, but, on the contrary, was given for the employer's benefit. To hold that the commission is without authority to grant an award in the case of a self-insurer would, to a very large extent, defeat the very purpose sought to be accomplished by the enactment of the law. This the courts should not do unless no other result is consistent with the provisions of the entire act. By holding that the commission has authority to award compensation against a self-insurer, this court is creating no new agency, nor is it granting to such agency any power or authority not reasonably arising by necessary implication in the exercise of the power granted.

In paragraphs 4 and 5 of the syllabus to the case of *Gilbert* v. *Craddock*, 67 Kan. 346, 72 Pac. 869, it is said:

"A necessary implication does not shut out every other possible or imaginary conclusion, but is such a one as, under all the circumstances, a reasonable view impels us to take, the contrary of which would be improbable and absurd.

"In drawing such implication, courts may read the entire act, as well as past acts in pari materia; take into consideration the purposes and scope of the act, the inconveniences, inconsistencies, and absurdities of a contrary view, and the general policy and character of our institutions."

In *Brown* v. *Clark*, 102 Tex. at page 333, 116 S. W. at page 364 (24 L. R. A. [N. S.] 670), the court said:

"It is elementary that the grant of a specific power or the imposition of a definite duty upon any person or court confers by implication the authority to do whatever may be necessary in order to execute the power conferred or to perform the duty imposed, and the implied power is as much a part of the statute as if it were written into the body of the act itself."

The members of this court are all of one mind that the commission is clothed with authority to make an award against a self-insurer, and that the objection cannot be maintained.

It is also contended that the deceased was not in the employ of the appellant company at the time of the accident, but was an independent contractor. There is nothing in the evidence to warrant any such conclusion or contention.

It is further insisted that the commission was without jurisdiction to make an award in this case, for the reason that the employment of deceased was both casual and not in the usual business of appellant. Comp. Laws Utah 1917, section 3111, so far as material here, reads:

"The term 'employé,' 'workman,' and 'operative,' as used in this title, shall be construed to mean: (1) * *. * (2) Every person * * * in the service of any person, firm or corporation, employing four or more workmen * * * regularly in the same business, or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens, and also including minors who are legally permitted to work for hire under the laws of the state, but not including any person whose employment is but casual, or not in the usual course of trade, business, profession, or occupation of his employer."

Since the date of the accident involved in this case the foregoing section has been so amended that the question here discussed is not likely to be before the courts again.

It is undisputed that the chief occupation of deceased was that of a farmer. He owned land located under the canal in question, and resided there with his family, and had done so for more than three years. He worked on the farm during the summer months. The canal is owned by a corporation known as the Salt Lake & Utah Canal Company. The

water flowing through the canal is used for irrigation and for watering stock. It is also undisputed that appellant obtained water from this canal during both the irrigation and nonirrigation seasons, and that the water was used in the operation of its business of mining and milling ores. The water thus acquired or procured was necessary in conducting and carrying on its usual and regular business. The Copper Company, appellant, had an employé by the name of Larson, known as the "canal boss," regularly and continuously engaged in looking after the repair of the canal, keeping it free from débris and seeing that the canal was not permitted to overflow its banks, all of which might result from an excessive amount of water flowing through the canal, or, during the winter months, from ice interfering with the flow of the water. It was the custom, when repairs were required, for men to be employed from any place they could be obtained to make such repairs. Ordinarily it was the farmers residing near the canal who were employed. The deceased had been employed for a short period at one time some months prior to the date of the accident to assist in doing some work upon the canal. At the time of the accident it appears that it was advisable to strengthen the banks of the canal to prevent an overflow, and the matter was, by the "canal boss," submitted to the superintendent of appellant company, who instructed that the necessary help be procured and the repairs made. Accordingly, on December 30th, the deceased was employed. He worked that day and the following day. On January 1st, while so employed, he received an injury which resulted in his death. The commission, in its decision, makes the following finding, which, in our judgment, is supported by the evidence.

"It appears from the evidence that Louis J. Rushton was employed with a number of other men to make repairs along the banks of the Salt Lake & Utah Canal, where, because of the formation of ice, the water was overflowing the banks. This canal furnished the water used by the defendant company in its business of smelting. Water, it appears, is a very important factor in the business. Indeed, it would seem that the plant could not operate without it —an adequate supply of water—and it appears from the evidence

that for about six years last past the canal has carried water during the nonirrigating season for practically no other purpose than to serve the needs of this company, and the company regularly employed men to keep the canal open, and while it was an unusual occurrence that men had to be employed to repair the banks of the canal, and it appears that Louis J. Rushton was employed on one of these occasions, the commission is unable to find that his employment was not in the usual course of trade, business, profession, or occupation of his employer, but, on the other hand, is persuaded and does find that what he was doing was so intimately connected as an incident and factor in its business to make it necessary to rule against the defendant on this ground."

As indicated, we are satisfied that the evidence fully justifies the commission's conclusion that obtaining water from this canal was essential and necessary for the operation of the mining and milling business of appellant.

Any one employed in constructing or repairing a ditch or other means of conveying water used in the business of the appellant is just as definitely employed and engaged in the usual occupation or business of the employer as is a machinist engaged in assembling or repairing a machine operated in taking ore from the company's mines. The canal in question was under the control of the appellant company. True, it was owned by another corporation, and was utilized to convey water to farmers for irrigation and domestic purposes. Appellant seems to have been in control of and charged with the duty of keeping the canal free from obstructions, and seeing to its repair whenever necessary, so that the same would convey water to be used by the appellant. It must therefore, in our judgment, necessarily follow that one employed as was the deceased in making repairs on that canal was engaged in an employment necessary in conducting the usual business of the company.

Appellant further maintains that admitting that the employment was in the usual course of the business of the employer, nevertheless it was but casual employment, and for that reason it is not within the jurisdiction of the commission to make an award. The authorities are not uniform in defining what constitutes casual employment under acts

similar to our Workmen's Compensation Act. As indicated, there was no regularity of employment or assurance of employment at any time or at all. It was only when the exigencies of the situation required extra workmen in addition to the regular employés of appellant company that the deceased or others engaged in repairing the canal at this or other times were employed. At the time of the employment of the deceased nothing was said as to the length of time that such employment would continue. It was understood that as soon as the necessary repairs were made upon the canal such employment would cease. These facts are not in dispute. If this court should follow the conclusions reached by the Supreme Courts of Massachusetts and Illinois, and, possibly, Pennsylvania, the applicant must be denied relief in this case. *In re Gaynor,* 217 Mass. 86, 104 N. E. 339, L. R. A. 1916A, 363; *In re Cheever,* 219 Mass. 244, 106 N. E. 861; *Aurora Brewing Co.* v. *Ind. Board,* 277 Ill. 142, 115 N. E. 207; *C. G. W. R. R.* v. *Industrial Com.,* 284 Ill. 574, 120 N. E. 508.

The intent of the legislation in question was to create a new or additional burden upon the industries of this state not heretofore borne by such industries, and to establish a system whereby the industries should bear the cost of providing for those injured while engaged in such industries or the dependents of those sustaining injuries resulting in death. Such being the object sought, it is, in our judgment, more in consonance with that purpose to conclude that it was not the intention of the Legislature to exclude from the operation of the act any one engaged in work necessarily required in the usual prosecution of such industries, and that the duration of such employment or the infrequency of the same ought not to control the courts in determining whether the employment was casual or otherwise. If the employment was essential and was required in the prosecution of the regular business of the industry, the industry, in order to carry out and effectuate the purpose of the act, should pay for any injuries sustained. The statutes of this state require the courts to give to legislative enactments a liberal

construction, with a view to effectuate the purpose sought by the Legislature.

It may be claimed, and it is claimed by counsel for appellant, that to hold that the deceased in this case was not a casual employé is in effect to nullify the provisions of the statute. Let us suppose that some truck or automobile belonging to this appellant had been wrecked upon the public roads of Salt Lake county near the home of the deceased; that the deceased had been employed by the company to remove that demolished machine and throw it upon the scrap heap; that when he had done so his employment would cease. That would be a case of casual employment, and just such employment, in our judgment, as the Legislature had in mind when it enacted this law. No one can say that to scrap a broken down truck or automobile is in the usual course of the business or trade of this appellant. In this case, as has been definitely indicated, the deceased was engaged in no such exceptional or unusual employment.

In *Holmen Creamery Ass'n* v. *Industrial Com.*, 167 Wis. 470, 167 N. W. 808, the Supreme Court of Wisconsin gives sanction to the principle that the casualness of the employment rests, not upon the infrequency of the employment or the duration thereof, but that the nature of the employment must determine whether the same was casual or otherwise. The facts involved in that case are not in dispute. They are given by the court in the following language:

"Willum was hired by the manager of the Creamery Association to make some repairs on the creamery, consisting of mason work and plastering inside and outside of the building. He started to work about ten o'clock in the forenoon of November 26, 1916, and was injured about three o'clock in the afternoon of the same day. He had previously worked for the creamery association off and on, and had built part of the building, but had never been steadily employed by it. He was always hired specially whenever he did repair work for it, and was paid by the hour or day. It was understood that when these repairs were completed his employment terminated, and that if he rendered further services it would be under a new employment."

The question presented for determination by that court does not differ in principle from one presented by this record.

The court, in discussing the question here under considera-
tion as applicable to the facts in that case, said:

"It is quite evident that the term 'employment' used in the
quoted section refers to the nature or kind of service rendered by
the employé rather than the nature of his contract of hiring. The
true test, therefore, is whether the services rendered or the work
done by the employé is of a casual nature."

We have seen that the work in which the deceased was
engaged at the time of the accident was work required in the
actual operation of mining and milling in which business
the appellant is engaged. The constant use of water, it
seems to be conceded, was essential to that industry. We
therefore conclude that the deceased was not, at the time of
the injury, a casual employé within the meaning of the term
as used in the act.

The testimony upon which the award was made in
this matter was taken before a referee. Appellant's counsel
objected to any hearing by the referee, and based such ob-
jection upon the ground that the commission has no power
or authority to delegate to a referee the right to hear testi-
mony in support of the application, and, further, that if it
be admitted that the commission has authority to appoint
a referee the referee appointed in this case had no power to
administer an oath. Counsel supplemented his objections by
a motion to stay the proceedings, and requested that the
application be heard before the commission or some member
thereof.

The facts that the commission is an administrative and
ministerial body, and that no express power is given to name
a referee, are again urged, among other reasons, why such
power could not be delegated. That a referee had been reg-
ularly appointed by the commission seems to be conceded,
at least no question is raised in that regard. The subpœna
or notice served upon the appellant of the time and place
of hearing stated that at such time "the commission would
hear and dispose of the application" in the manner provided
by law. In the investigation of any matter before the com-
mission it is not bound by the common law or statutory rules

of procedure, "but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this title." Comp. Laws Utah, 1917, section 3149. The commission is authorized to and charged with the duty by other sections of hearing and determining compensation cases. "The commission shall have full power and authority to hear and determine all questions within its jurisdiction, pertaining to the payment of compensation and benefits, and its decision thereon shall be final. * * *" Sections 3130, 3148, "Each of the commissioners and the secretary of the commission, for the purposes mentioned in this title shall have power to administer oaths, etc. Section 3079.

Comp. Laws Utah 1917, section 3100, is as follows:

"The commission may act through proper deputies and may delegate to such deputies such powers as it deems necessary or convenient. Among the powers which may be so delegated shall be the power to enter into contracts of insurance, insuring employers against liability for compensation as herein provided and insuring to employés the compensation fixed by this title; also the power to make agreements for the settlement of claims against said fund for compensation for injuries in accordance with the provisions of this title; also the power to determine to whom and through whom payments of such compensation shall be made; and also the power to contract with physicians, surgeons, and hospitals for medical and surgical treatment and care and nursing of injured persons entitled to compensation from said fund."

The Attorney General, on behalf of the commission, insists that the foregoing section is conclusive upon the question of the commission's authority to name deputies and to delegate to such deputies such powers as it (the commission) deems necessary or convenient. On the other hand, it is the claim of appellant that the general grant contained in the first sentence of the foregoing section is restricted or limited to the powers enumerated in the remaining part of that section; that in the interpretation of statutes it is a rule of construction that words granting general powers are limited to powers enumerated if such enumeration immediately follows the general grant and the powers enumerated relate to the same subject. This rule of interpretation          6

is one that is recognized by all writers on statutory construction, and is applied by the courts unless its application would result in defeating the manifest intent of the Legislature or from the language used it is apparent that it was not intended by the Legislature that the general powers delegated should be restricted. The rule invoked is, after all, merely a rule of construction. That rule is, like all rules of construction, controlled by the intent of the Legislature, if that intent can be rationally determined from the language used, considered in connection with the other provisions of the act, where the same is found. . The language here used indicates that the powers enumerated are not exclusive. After the general words or grant the statute says, "Among the powers which may be so delegated" shall be those enumerated. One of the definitions of the word "among," found in the Century Dictionary, is: "In the number of; out, or out of." We have a right to conclude, therefore, that the special powers enumerated were not intended to be restricted, but that the commission is authorized to delegate to deputies other powers not inconsistent with or prohibited by other provisions of the act. The foregoing conclusion is strengthened by the general objects sought to be accomplished by this legislation; namely, to secure relief to injured employés, or their dependents in the event of death, without unnecessary delay, and to do so with the least possible inconvenience and expense either to the applicant or to the state consistent with justice. Much of the mining industry of this state is located in the southern counties. To compel the attendance of witnesses from that part of the state, or for the commission as a body to visit such industries for the purpose of taking testimony, would cause inconveniences and incur expenses not contemplated by the Legislature, but which were, on the contrary, sought to be avoided. The authority to make the investigation "in such manner as in its (the commission's) judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this title" in no way interferes with or relieves the commission of its duty to hear and determine

all matters relating to compensation. The referee does not, and cannot, make any award or make any binding order respecting an award. That is a matter left to the determination of the commission itself, when the testimony taken is submitted to and considered by the members of the commission. Taking testimony by a referee is only one manner of investigating and ascertaining the facts involved in any particular proceeding.

It is also suggested that it has been the uniform custom of the commission in this state, and the custom in other states, to delegate to a referee the authority to take testimony in matters of this kind and to report the same to the commission, and that "it would seriously cripple the functions of the commission if such could not be done." Be that as it may, we are of the opinion, and so hold, that the commission is given authority to delegate to a deputy, designated herein as a referee, the power to take testimony in support of or against the application of any one asking relief before the commission. The power to take testimony necessarily carries with it the authority to administer oaths.

It is further claimed by appellant that the minor heirs, and particularly the unborn child of the deceased, are not bound by the proceedings before the commission, and that as a result the award must fail, for the reason that if permitted to stand it might expose the appellant company to a double liability, and would result in taking property without due process of law, and deny to appellant the equal protection of the law, in violation of both the federal and the state Constitutions.

Section 5 of article 16 of our state Constitution reads as follows:

"The right of action to recover damages for injuries resulting in death, shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation."

By the provisions of Comp. Laws. Utah 1917, section 3127, it is provided that for injuries resulting in death the dependents of the deceased are given the right, within such time as by rule the commission shall prescribe, to elect between

bringing suit at law against such employer to recover damages for such death or accept the benefits allowed dependents of deceased employés under the act. It is also provided that if the dependents elect to take under the act they will not be entitled to sue the employer at law to recover damages. It is not questioned by appellant that the right of an election of remedies given to the dependents of any one whose injury results in death, and for whose death the right of action is guaranteed by the Constitution, contravenes or is in conflict with any constitutional right. The constitutionality of such provision, however, is set at rest by the Supreme Court of the United States in the *Arizona Employers' Liability Cases*, 250 U. S. 400, 39 Sup. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537.

It is, however, contended that the guardian attempting to make the election in this case was not authorized or empowered to make a binding election on behalf of the minors, and that the court authorizing the election was without authority to make such order. It appears in the record that Julia C. Rushton, the mother of the minor children, filed a petition in the district court of Salt Lake county, where said family resided, in which the necessary jurisdictional allegations were contained, to authorize the appointment of a guardian both of the persons and the estates of the minors, and it also appears that relatives of the minors residing in said county joined in the petition, and asked that the mother be appointed guardian. The order granting the petition and naming the guardian recited that proof had been made that notice had been given according to law to the relatives of the minors residing in Salt Lake county and to the person in whose care said minors were. It would seem, therefore, that proceedings for the appointment of a guardian were in every way regular, and that the court had jurisdiction of the parties at the time of making the appointment. It is however, further objected that the proceedings before the district court, wherein the mother was named guardian of the minor children, were "entirely ex parte, and that the Utah Copper Company was in no way a party thereto."

Conceding such to be· the fact as shown by the record, it is pertinent to inquire, In what way was the appellant injured? In what way has any of its rights been invaded? The right of election of remedies given to dependents of a deceased by section 3127, supra, is personal to such dependents, and the employer is in no way concerned in such election, except to the extent that he has a right to insist that the election be made ,by some one with legal authority to bind the minors for whom the election is made, and release the employer from any further liability.

It also appears that subsequent to the order naming the mother guardian of the estates and persons of the minors a petition was filed in the said district court, asking permission to elect to take compensation for the minors for the death of their father under the Workmen's Compensation Act. Accordingly, upon a hearing of that petition, an order was made, authorizing the guardian to make such election and to take such compensation as might be awarded by the Industrial Commission.

The guardian having proceeded to make the election by filing her petition with the commission, it remains to be determined whether the court authorizing the guardian to make such election exceeded its authority in that regard.

It is claimed by appellant that the right given to the heirs by the Constitution to bring an action against any one negligently causing death cannot be waived by a guardian either under an order of court or otherwise, and that the court has no power to authorize such waiver. Comp. Laws Utah 1917, section 7832, in 'defining the duties and authority of guardians, says:

"Every guardian must settle all accounts of the ward, and demand, sue for, and receive all debts due to him, or may, with the approbation of the court, compound for the same and give discharges to the debtor, on receiving a fair and just dividend of his estate and effects; and he must appear for and represent his ward in all legal suits and proceedings, unless another person be appointed for that purpose."

The right to recover damages for the death of any one guaranteed by the Constitution is founded upon the neglect

or failure of duty upon the part of the employer or individual causing the injury resulting in death. Whatever amount a minor might recover would be a debt due to him, probably not in the usually accepted sense of the term "debt," but in legal effect the same. It would seem from the statute above quoted that the guardian may, with the approbation of the court, compound such debt and discharge the debtor. In that section of the statute alone the court is empowered, upon a proper showing and it appearing that the best interests of the minor require the acceptance of an award made under the Workmen's Compensation Act, to authorize its acceptance. It has never been questioned in this state since statehood, nor in the territorial days, that the probate courts, or, rather, the district courts since statehood, in the administration of the Probate Code, did not have authority and power to authorize the legal representatives of deceased persons to compromise or settle for a stated sum with the employer or other persons responsible for the negligence which caused the death of the person whose estate is being administered. District courts, in the administration of the Probate Code, have uniformly assumed to exercise such right. Much is said in the appellant's brief concerning the powers of probate courts, and it is urged that such courts, being of limited jurisdiction, can have only such powers as are expressly given to them. There is no such a court as a probate court in this state. Probate courts, as they existed in territorial days, ceased to be at the date of the admission of Utah into the Union. The jurisdiction over and the administration of the Probate Code was by the Constitution transferred and given to the district courts. District courts are constitutional courts of general jurisdiction,, and in the administration of the Probate Code are authorized to exercise such general or inherent powers as attach to courts of general jurisdiction in the administration of the affairs within their jurisdiction. Not only, in our judgment, is the district court given authority by the Probate Code to direct and authorize an election of remedies, as it did in this case, but if no such power existed by the provisions of the

Code, and the district court having jurisdiction of the        8
persons and estates of minors is convinced that it is
for the best interests of such minors that an election be made
to take the award provided for by the Workmen's Compensa-
tion Act, the court has the authority to make such order.

It is also contended by appellant that by the decision of
this court in the case of *Garfield Smelting Co.* v. *Industrial
Commission,* supra, it has been determined that before there
can be an election of remedies on the part of a minor in case
of death there must first be a legal and judicial determina-
tion of the question of whether the death was caused through
the negligence of the employer by some "proper judicial pro-
ceedings in some manner known to the law." Both parties
rely upon that opinion, and extensive quotations are made
in the briefs in support of the positions urged. Respecting
the right to bring an action for the death of an adult, that
case holds that the Legislature is without authority to de-
prive the parties entitled to bring such action of such right.
Also that a minor, not being sui juris, cannot waive the right.
It is also determined that the Legislature cannot delegate
to a parent, or to a mother, in this case, as such, the power
to waive the right to bring an action. In other words, that
some legal proceeding must be had to give to the party mak-
ing the election, or exercising the waiver, power· to bind the
minor. The opinion in the *Smelter* Case nowhere attempts
to define or point out the proceedings necessary to obtain for
the minor the right to elect or waive, nor does it hold that
it must first be determined that the death was not caused
by the negligence of the employer. Indeed, if the death were
not caused by the negligence of the employer, no need of
election or waiver exists. No right of action exists unless
some one is at fault, and such fault contributed to the in-
jury resulting in death. The compensation provided for in
the Workmen's Compensation Act is in no way dependent
upon the negligence of the employer. It is a definite, fixed
sum, which the statute provides shall be paid under certain
relationships existing between the employer and the employé.
·The right of dependents to receive the award provided for

in the act rests upon the election of such dependents to waive the right of action given by the Constitution. The rights of both dependents and employer are reciprocal. Any payment made under an award of the commission would, of necessity, reduce to that extent any liability which might attach by reason of the negligence causing the death. When it is made to appear to a court having jurisdiction of the person and estate of the minor that the interests of the minor would be best subserved by accepting the compensation allowed under the act, it is difficult to conceive why the power does not exist to authorize an acceptance of the same and to release the employer or waive the minor's right to bring a suit at law. Evidently the court in this case, when it made the order, was satisfied that such were the facts, and so long as the order remains in force, and no objection is made by any one in interest why it should not be enforced, it does not lie in the mouth of the employer to object or complain so long as the court had jurisdiction to make the order.

It appears in this record that at the date of the death of the father there was an unborn child. That condition existed when the original petition was filed in the district court for the appointment of a guardian for the nine living children. It also existed at the date the petition was filed with the commission and at the date set for hearing that petition. It being made to appear to the referee at that time that there was an unborn child, under objection of counsel for the copper company the hearing was postponed, and it seems that a petition, or supplemental petition, asking for appointment of a guardian for the unborn child, was then filed in the district court. Upon a hearing on that petition an order was made, naming Julia C. Rushton, the mother, as guardian of the person and estate of such child. Thereupon an order was made that she, as guardian, might elect to take compensation for the child under the Workmen's Compensation Act. It is strenuously insisted by counsel for appellant that the court could not lawfully make such an order; that the child was not in existence in a legal sense; that it was not a dependent under the terms of the act until after its birth, nor

was it an heir under the general laws of the state until such time.

Comp. Laws Utah 1917, section 3140, provides that a posthumous child child shall be included and considered as a dependent. Section 6340 of the same compilation, relating to wills and successions, declares an unborn child to be an heir, and section 6426 provides that "posthumous children are considered as living at the death of their parents." Under section 7799, being a part of the Probate Code, under the head of "Guardianship," appears the following:

"A guardian of the person or estate, or of both, of a child born, or likely to be born, may be appointed by will or by deed, to take effect upon the death of the parent appointing; such appointment may be made by the father, with the written consent of the mother; or by either parent, if the other be dead or incapable of consent."

That statutory provision recognizes the general principle of appointing by will or deed a guardian for an unborn child. The right to do so therefore exists in this state. It affirmatively appears in the petition filed in the district court that no guardian had been appointed by will or deed for either the living minors or the unborn child. The statutory provisions, making a posthumous child an heir and also a dependent, of necessity, carry with them the inference that such child, upon birth, comes into or acquires certain property rights. While such rights may be indefinite and inchoate during the period between the death of the father and the birth of the child, nevertheless, they are rights that the courts should have, and must have, authority and power to preserve and protect. Let us suppose, for example, that a man dies leaving an estate valued at less than $10,000. He leaves a wife and an unborn child. That child may be born at any time within nine months after the death of the father. Under the probate laws of this state, that estate can be administered and distributed within four months. As we have seen, an unborn child is considered and treated as living after the death of the father. Can it be contended by any one that a court is without authority, through its officers, to in some way protect that child's inheritance, keep the property intact, and do whatever is necessary for the delivery

of the property to the child or its guardian upon its birth? We think not. To determine otherwise would be to hold that the statute gives an unborn child certain property rights, and considers the child as living, yet leaves no machinery of law by which such rights can be protected or preserved. Such authority must exist somewhere, and it can exist nowhere else than in a court having jurisdiction of the estate. Furthermore, the authority of a court to name a guardian for an unborn child independent of a statute likes ours is recognized. The Supreme Court of Georgia, in an early case, *Morrow* v. *Scott*, 7 Ga. 537, says:

"We are of the opinion, both upon principle and authority, that a child in ventre sa mere, at the time of the death of the intestate's ancestor, who is born within the usual period of gestation thereafter, is entitled to a distributive share of such deceased intestate's estate. Blackstone states the rule to be that 'An infant in ventre sa mere, or in the mother's womb, is supposed in law to be born, for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards, by such limitation, as if it were then actually born; and in this point, the Civil Law agrees with ours.' 1 Bl. Com. 130. 1 Roper on Legacies, 53."

The same principle is recognized by the Supreme Court of Alabama in *Nelson* v. *Iverson*, 24 Ala. 9, 60 Am. Dec. 442. At page 448 of the last-mentioned volume (at page 20 of 24 Ala.) the court says:

"It seems now to be the settled law that an infant is in esse from the time of its conception for the purpose of taking any estate for its benefit, provided it be afterwards born alive, and after such a period of fetal existence that its continuance in life might be reasonably expected."

The right of an heir to recover damages for the wrongful death of an adult is, after all, but a property right. It may, in a certain limited sense, be considered as a personal right, but, nevertheless, the result to be obtained by such an action is property equivalent to the loss sustained. The right of the unborn child to maintain an action for the death of the father in this case after its birth, or the right to take under the Workmen's Compensation Act, has for its object

one and only one purpose. That purpose is compensation for the death of the individual caused by industry. If it be admitted, as it seems it must be under the statute, that a guardian may be appointed to protect the property of an unborn child, it would indeed be a strange anomaly if in the event that litigation ensued involving the right to that property the guardian would .have no authority to represent the person of the unborn child so that it might appear in court and defend its rights. It is a little difficult to conceive just what voluntary election an infant child just born would have the intelligence to make, or in what way its wishes or desires could or would be consulted to any greater extent than ·a child within its mother's womb. It could only act, and would only act, in either case through officers appointed by the court to preserve and protect the estate or interests of such child. Any reason that might exist why a guardian could not be appointed to care for the estate of an unborn child would exist to the same extent why a guardian could not be authorized and appointed to act for an infant without intelligence sufficient to make an election and without power or ability to understand what was being done for or against its interests. A statute of this state having recognized the right or the authority to appoint a guardian for an unborn child either by will or deed, it must necessarily follow, it seems, under Comp. Laws Utah 1917, section 7809, that when it appears necessary or convenient the court may name a guardian for the same purposes for which one might have been appointed by will or deed.

We conclude, therefore, that the court was in the exercise of its rightful authority, under the circumstances appearing in this record, when it named a guardian for the unborn child, and that such guardian, when authorized by an order of court, was empowered to elect to take the award that could be made for it under the Workmen's Compensation Act.

It is well to keep in mind that the amount of compensation in cases of total dependence, such as this, is a definite, fixed sum. It is a certain per cent. of the weekly wage at the date of the injury. It is not controlled by the number

of dependents. Neither is it within the discretion of the commission. The addition of an unborn child by subsequent birth neither adds to nor subtracts from the amount of the award. No definite pro rata of the award is paid to or due to any particular dependent. That is a matter left with the discretion of the commission under authority of section 3141, supra. Under the provisions of that section, if the commission concludes that the payment of any part of the award should be withheld until the birth of the unborn child, it would seem that such power is given to it under that section. If the exigencies of the family be such that it is deemed advisable that part of the award be paid so as to be used in paying the expenses of the birth of the child, power evidently exists under the section last above mentioned in the commission to so order.

The Attorney General has at some length in his brief discussed the right of the commission to take jurisdiction and determine an award upon the application or petition of a part of the dependents only, regardless of the election of the others who might be entitled to bring an action for the death of an adult under Comp. Laws Utah 1917, section 6505. Having held that an unborn child may be represented by a guardian, and it appearing that such child was represented by a guardian in this proceeding, and, further, that such guardian under an order of court elected to take the award provided in the act, it is not necessary to pass upon that question in the case before us. Conceding merit in the argument of the Attorney General, we prefer to express no opinion on that question, as it will be time enough to determine the same when it is necessary for a decision of the matter before the court.

The judgment of the district court upholding the award is affirmed. Interest will be allowed against the appellant on the monthly payments awarded by the commission from the dates upon which they were payable under the award to the date of payment. Appellant will also be required to pay the costs on this appeal.

CORFMAN, C. J., and FRICK, WEBER, and THUR-
MAN, JJ., concur.