## J. D. McLENNAN v. F. A. PLUMMER.

(158 N. W. 269.)

Notes and securities — contract — rescission — action for — trial de novo — fraud — consideration — failure of — findings and conclusions — trial court.

1. On a trial *de novo* of an action brought to rescind a contract and to have certain promissory notes and securities canceled upon the alleged ground of fraud and failure of consideration, the findings and conclusions of the trial court in defendant's favor are sustained.

Corporation — capital stock — assignment of — title.

2. A formal written assignment of an interest in the capital stock of a corporation which has issued no certificates of stock is not essential to pass title as between the parties.

Corporation — capital stock — oral agreement for sale — fully executed — written assignment — no agreement for — vendee — recognized as owner — equity — court of — rescission.

3. Where an oral agreement for the sale of an interest in the capital stock of a corporation has been fully executed, without anything having been said with reference to a written assignment, and the vendee has for over a year been recognized by all concerned as the owner thereof, a court of equity will not adjudge a rescission merely because of a subsequent refusal by defendant to give such formal assignment.

Fraud — never presumed — must be proved — evidence — clear and satisfactory.

4. Fraud is never presumed, and its existence must be established by clear and satisfactory proof in order to justify a court in rescinding a sale on such ground.

Trial de novo — supreme court — evidence — examination of — fraud — consideration — failure of.

    5. Upon a trial *de novo* in the supreme court, evidence examined and held insufficient to establish either actual or constructive fraud or failure of consideration.

Opinion filed April 19, 1916.

Appeal from the District Court, Cavalier County; *W. J. Kneeshaw,* J.

From a judgment in defendant's favor, plaintiff appeals.

Affirmed.

*Grimson & Johnson,* for appellant.

"Although the by-laws of a corporation require the entry of transfers on the stock register, yet if none is kept and a transfer by the subscriber to the capital stock is entered according to the custom of the company on the subscription list, the same is sufficient." 10 Cyc. 593.

And this is true even where the statute requires the entry of such transfer of stock to be valid as to third persons, and a simple notation in the stock book showing that certain stock has been assigned is sufficient. 10 Cyc. 588.

. The novation agreement partakes of the nature of an implied contract. An implied contract is one the terms of which are to be inferred from the conduct of the parties. Comp. Laws 1913, §§ 5085, 5903, 5907, 5915.

When, through fraud, mistake, or accident, a contract fails to express the real intention of the parties, such intention shall be regarded. Comp. Laws 1913, §§ 5900, 5947.

The mistake of one party, when combined with the inequitable conduct of the other party in respect to the matter, is fraud sufficient to entitle the injured party to ask for rescission. 18 Enc. Pl. & Pr. 782, and cases cited.

*W. A. McIntyre,* for respondent.

. "A subscription right in a proposed corporation is assignable by parol, and ownership passes immediately on consummation of the sale and by force thereof, and not by operation of law." Manchester Street R. Co. v. Williams, 71 N. H. 312, 52 Atl. 461; Lipscomb v. Condon, 56 W. Va. 416, 67 L.R.A. 670, 107 Am. St. Rep. 946, 49 S. E. 392.

As between vendor and vendee transfer of the stock on the books of the corporation is not necessary to protect an equitable title in the vendee. Gemmell v. Davis, 75 Md. 546, 32 Am. St. Rep. 412, 23 Atl. 1032; Johnston v. Laflin, 103 U. S. 800, 26 L. ed. 532; Re Argus Printing Co. 1 N. D. 435, 12 L.R.A. 781, 26 Am. St. Rep. 639, 48 N. W. 347.

An oral contract for the sale of shares of stock where payments are made on the purchase price is valid. Berwin v. Bolles, 183 Mass. 340, 67 N. E. 323; Sprague v. Hosie, 155 Mich. 30, 19 L.R.A. (N.S.) 875, 130 Am. St. Rep. 558, 118 N. W. 497; First Nat. Bank v. Holland, 99 Va. 495, 55 L.R.A. 155, 86 Am. St. Rep. 898, 39 S. E. 126.

There is no valid ground for rescission. There is no fraud, deceit, or mistake. Comp. Laws 1913, §§ 5850, 5944; Sioux Falls Bkg. Co. v. Kendall, 6 S. D. 543, 62 N. W. 377; Cook, Corp. § 374; Gemmell v. Davis, 75 Md. 546, 32 Am. St. Rep. 412, 23 Atl. 1032; Re Argus Printing Co. 1 N. D. 435, 12 L.R.A. 781, 26 Am. St. Rep. 639, 48 N. W. 347.

"A court of equity will not set aside a contract obtained through fraud unless it be productive of injury." 1 Story, Eq. Jur. § 203; Sonnesyn v. Akin, 14 N. D. 248, 104 N. W. 1026; Nelson v. Grondahl, 12 N. D. 133, 96 N. W. 299; Hairalson v. Carson, 111 Ga. 57, 36 S. E. 319; San Diego Flume Co. v. Souther, 32 C. C. A. 548, 61 U. S. App. 134, 90 Fed. 164; Ada County v. Bullen Bridge Co. 5 Idaho, 188, 95 Am. St. Rep. 180, 47 Pac. 824.

A failure to fully comprehend the legal effect of a contract is no ground for rescission, or for setting it aside, when it appears that there was no fraud or imposition in procuring its execution. Korne v. Korne, 30 W. Va. 1, 3 S. E. 17; Perkins v. M'Gavock, Cooke (Tenn.) 415; Pearce v. Suggs, 85 Tenn. 724, 4 S. W. 526; Brooks v. Hamilton, 15 Minn. 26, Gil. 10; Spitze v. Baltimore & O. R. Co. 75 Md. 162, 32 Am. St. Rep. 378, 23 Atl. 307; Albrecht v. Milwaukee & S. R. Co. 87 Wis. 105, 41 Am. St. Rep. 30, 58 N. W. 72.

The supreme court will not disturb the trial court's findings on the question of fraud. That is a question of fact, and the findings are conclusive. Castle v. Kemp, 124 Ill. 307, 16 N. E. 255; Hoobler v. Hoobler, 128 Ill. 645, 21 N. E. 571; Ruettell v. Greenwich Ins. Co. 16 N. D. 546, 113 N. W. 1029; Dowagiac Mfg. Co. v. Hellckson, 13

N. D. 257, 100 N. W. 717; James River Nat. Bank v. Weber, 19 N. D. 702, 124 N. W. 952.

Fisk, C. J. Plaintiff by 'this action seeks to rescind a contract whereby a former mutual rescission of a prior agreement was had, and he prays for the cancelation of certain notes given by him to the defendant pursuant to the terms of the last contract. Plaintiff relies for relief upon the grounds both of fraud and failure of consideration. Trial was had in the district court of Cavalier county, and resulted in a judgment dismissing the action. We are asked on this appeal to try the case *de novo*.

The facts necessary to an understanding of the issues involved are in the main as follows: In the fall of 1912 plaintiff exchanged certain interests held by him in the J. D. McLennan Company, a corporation located at Sarles, for defendant's one-half interest in a half section of land owned jointly by these parties, and transfers were made pursuant thereto. Thereafter defendant, for some reason not here material, became dissatisfied with the trade and brought an action in March, 1913, for a rescission of the contract and the recovery of his land. Pending such action the witness Elves, a mutual friend of the parties, interceded, and caused to be consummated an oral contract of settlement of all differences between them. According to the terms of such oral agreement, plaintiff was to retain the land theretofore transferred to him, he to execute and deliver to defendant as payment therefor, in lieu of the stock in the McLennan Company, the two promissory notes mentioned in the complaint, it being tacitly or impliedly understood, although nothing was expressly mentioned to that effect, that plaintiff was to be thereby reinvested with the interest which he had theretofore assigned to defendant in the corporation aforesaid. No certificates of stock were ever issued by such corporation, and when the first trade was consummated plaintiff executed and delivered to defendant a formal written assignment of his stock interests in such corporation, and it seems to be the contention of appellant that defendant owed to plaintiff a legal duty to retransfer such stock to him by means of a like formal written assignment, although no express understanding that he should do so is claimed. This entire controversy grows out of such alleged duty and the breach thereof by defendant, it being con-

tended that defendant, in failing and refusing to make such retransfer, was actuated by fraud, either actual or constructive, and, further, that such breach of duty operated to cause a failure of consideration for the notes executed pursuant to the settlement contract.

We are unable to uphold appellant's contention. The trial court was, we think, clearly correct in refusing to adjudge a rescission of the contract upon the grounds urged. Defendant, at no time after the last contract was entered into, asserted any interest whatever in the corporate stock; while perhaps he was somewhat arbitrary and even stubborn, we are not prepared to hold that he was actuated either by actual or constructive fraud. While, as stated by appellant's counsel, respondent is more or less inconsistent in his answer and testimony relative to the facts and to his attempted justification of his acts and conduct, we are satisfied from the record that he at no time sought or intended to take any undue advantage of appellant. As above stated, he at no time asserted any interest in such corporation, and we are convinced that at all times he honestly believed that a formal written assignment was not essential to a full realization by appellant of the fruits of the oral agreement of settlement. Indeed, at the time such settlement was made, apparently neither party deemed such formal assignment of the interest in the McLennan Company essential, for it was not then exacted, nor was the matter mentioned at that time nor, in fact, until more than a year thereafter, according to plaintiff's testimony. This being true, we fail to see how it can be held that the notes and security were obtained through fraud as alleged. The settlement was consummated in September, 1912, at which time the notes were given to take the place of the corporate stock. Appellant testifies: "I did not receive at that time any assignment from Plummer of the interest in the McLennan business. Never did receive an assignment of that interest from Mr. Plummer. After these notes had been delivered I stayed at Sarles until about the first day of May, and then went to Edmondton, Canada, and came back the third of September, 1913. After I came back I had some conversations with Mr. Elves and Mr. Plummer about the assignment of this stock in the McLennan Company. Sometime the latter part of September or the first part of October, as near as I can remember, I mentioned the fact to Mr. Elves that I did not receive—I asked Plummer to give me an assign-

ment of the stock in the hardware business and harness business, and he refused to do it. There wasn't very much said. The assignment was written out and he was asked to sign it. He said he never had any interest in the business and refused to sign it." It is quite evident that there was considerable friction existing between the parties, which no doubt accounts very largely for such refusal. The witness Elves was a friend of each and acted as peacemaker in bringing about the settlement, and had he, in plaintiff's behalf, asked for such assignment at that time when settlement was made, it no doubt would have been given. He completely exonerates respondent from the imputations of fraud.

He testifies:

Q. You don't think any fraud was intended on the part of Mr. Plummer when he refused to give this assignment, do you?

A. No, I don't think Mr. Plummer had any idea it would be a fraud not to sign that assignment.

Q. You considered that Mr. Plummer was acting in the best of faith at the time the notes were given?

A. Yes, I did.

Q. What did Mr. Plummer say when exhibit "F" was presented to him and Mr. McLennan asked him to sign it in the hardware store at that time?

A. He said, "No, I have nothing to assign." I think the words he used were, "I never had nothing to assign."

It nowhere appears that plaintiff was injured in the least because of the fact that no formal assignment was given. Nor does it appear that plaintiff has not, during all times since such settlement was made, exercised full and complete dominion over, and ownership in and to, the stock aforesaid, and that his ownership thereof was, and has been at all times, recognized by the officers of such corporation. No contention is made that defendant asserted any claim to such stock since the date of such settlement. In the absence of proof to the contrary, we deem it fair to assume that during the year which elapsed after the settlement was made and before such formal written assignment was demanded or requested by plaintiff, and ever since, he exer-

cised full and unmolested ownership in the stock of such corporation. In the light of these facts we think the learned trial court very properly declined to find that there was any fraud or misrepresentation on defendant's part as alleged.

As we view the case it is not very material or controlling as to whether the notes sought to be canceled were given by plaintiff as the agreed purchase price of the interest in the McLennan Company or as the purchase price of the land theretofore transferred by defendant to plaintiff, and we need not concern ourselves with the dispute over this question. However, we think there was a mutual rescission of the former deal, and that the notes were intended to represent the purchase price of the land, as found by the trial court. Conceding, however, as claimed by appellant, that the notes represent the purchase price of the interest in the McLennan Company, which plaintiff originally owned and traded to defendant under the first contract, and which by the last agreement was to be reinvested in plaintiff, still we fail to discover any sound reason why a court of equity should, under the facts, adjudge a rescission of such latter agreement. The necessary inference to be drawn from the transactions of the parties is, we think, to the effect that by the oral agreement plaintiff became the owner of the interest in the McLennan Company without a written assignment, through the mutual rescission of the first trade; but if defendant be deemed a vendor of such interest, the result must be the same, for there was no fraud, and plaintiff got all he bargained for, to wit, a perfect equitable title which no one has ever questioned. That a written assignment is not essential to transfer a good title is well settled. Cook, Corp. 6th ed. § 374; Manchester Street R. Co. v. Williams, 71 N. H. 312, 52 Atl. 461; Lipscomb v. Condon, 56 W. Va. 416, 67 L.R.A. 670, 107 Am. St. Rep. 946, 49 S. E. 392; Gemmell v. Davis, 75 Md. 546, 32 Am. St. Rep. 412, 23 Atl. 1032; Re Argus Printing Co. 1 N. D. 435, 12 L.R.A. 781, 26 Am. St. Rep. 639, 48 N. W. 347; Berwin v. Bolles, 183 Mass. 340, 67 N. E. 323; First Nat. Bank v. Holland, 99 Va. 495, 55 L.R.A. 155, 86 Am. St. Rep. 898, 39 S. E. 126.

If correct in the views above expressed, and we think we are, it follows that the agreement whereby plaintiff reacquired such interest in the McLennan Company was fully executed, and therefore the consideration for the notes did not fail.

Fraud, of course, is never presumed, and in order to justify a rescission for fraud the proof thereof should be established clearly and satisfactorily. Plaintiff has failed to meet such requirement. Defendant's refusal, over a year after the transaction occurred, to give plaintiff a formal assignment running to Arthur Daugherty, Robert Conn, and James Bevan, falls far short of constituting or disclosing fraud on his part at the date the contract was entered into and the notes given. The record is devoid of any proof showing, or tending to show, that defendant made a promise to transfer the interest in such corporation to plaintiff by a written instrument, and that defendant corruptly and fraudulently made such promise with the intent of not keeping the same. Hence, § 5944, subd. 4, Compiled Laws of 1913, which is cited, has no application.

There was no constructive fraud within the meaning of subd. 1, § 5850, Compiled Laws of 1913, which reads: "Constructive fraud consists: 1. In any breach of duty which without an actually fraudulent intent gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice or to the prejudice of anyone claiming under him." As before stated, respondent gained no advantage by his refusal to execute the formal assignment, nor was appellant misled to his prejudice. We have examined the other provisions of our statute cited by appellant, but deem them not applicable.

Finding no error in the record and deeming the findings of fact and conclusions of law of the trial court correct, it follows that the judgment should be affirmed, and it is so ordered.