# MRS. FRANK L. GOTCHY, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(194 N. W. 663.)

**Master and servant — procedure applicable on appeal from decision of compensation bureau.**

1. Upon an appeal from a decision of the workmen's compensation bureau the cause is a proceeding not triable under the so-termed "Newman Act."

**Master and servant — objection to time of filing compensation claim held without merit.**

2. Where a claim was filed by a claimant after sixty days from the time of the injury and death of an employee but within one year after his death, and, where the bureau received such claim and dismissed the same upon the ground that the deceased was injured in the course of an employment, it is *held*, for reasons stated in the opinion, that objections made concerning the time of filing are without merit.

**Evidence — declarations of employee injured in course of employment held admissible as part of the res gestæ.**

3. Where no direct proof has been adduced concerning the means by which an employee was injured in the course of an employment, and where, his declarations, made after the time of an alleged injury, established that his head received a blow through coming in contact with an iron pulley while he was engaged in constructing a unit in an elevator, it is *held*, for reasons stated in the opinion, that the declarations were properly admissible as part of the res gestæ.

**Master and servant — findings of trial court as to proximate cause of employee's death held conclusive.**

4. Where an employee, a carpenter, had previously appeared to be active and healthy, and, while engaged in an employment, his head received a blow, more or less severe, from an iron pulley proximate, and where, thereafter, the deceased became ill, suffered an operation upon his cranium and thereafter died, and where, pursuant to a post-mortem examination and medical diagnosis made before and after his death, it appears that the deceased was suffering

Note.—As to whether employees intermittently employed are employees within the meaning of Workmen's Compensation Acts, see notes in L.R.A.1916A, 120, 247, 365; L.R.A.1917D, 147; L.R.A.1918F, 215; 28 R. C. L. 767; 4 R. C. L. Supp. 1848; 5 R. C. L. Supp. 1561.

On time within which notice of injury must be given or other steps taken under Workmen's Compensation Statutes, see notes in L.R.A.1916A, 86, 244; L.R.A.1917D, 138; L.R.A.1918E, 559; 28 R. C. L. 825; 4 R. C. L. Supp. 1869; 5 R. C. L. Supp. 1579.

from a glioma which, through the superinducing cause of an external blow, might cause a hemorrhage so as to occasion his death, it is *held,* for reasons stated in the opinion, that the questions of the proximate cause of the employee's death was one of fact and that the findings of the trial court in that respect should not be disturbed.

**Master and servant — carpenter intermittently employed by elevator company held an "employee" within compensation act.**

5. Where the deceased, a carpenter, was intermittently employed by an elevator company in doing its carpenter work and general repair work and prior to the time of his injury had been engaged for some forty days in constructing a unit or leg for an elevator and doing some other general repair work, and where such carpenter was employed by the hour and his methods of prosecuting the work were in some respects subject to the control of the elevator company, it is *held,* for reasons stated in the opinion, that the decedent, at the time of his injury, was an employee of the elevator company engaged in the course of its business.

**Master and servant — power of court on appeal from compensation bureau stated; power of compensation bureau after judgment on appeal, stated.**

6. Upon an appeal from the decision of the compensation bureau, it is *held,* for reasons stated in the opinion,

(a) That the court has the power to determine the right of the claimant and to fix the compensation within the limits prescribed in the Compensation Act.

(b) That the court has not the express power to award a lump sum.

(c) That, after judgment, the bureau may not deny or reverse the right of the claimant thus established upon appeal.

(d) That, after judgment, the bureau may increase or decrease the award, or may award a lump sum, all pursuant to and consistent with the judgment rendered and the continuing obligations and duties imposed upon the bureau.

Opinion filed June 7, 1923.

Workmen's Compensation Acts, C. J. § 43 p. 52 n. 73; § 103 p. 106 n. 43; § 126 p. 121 n. 30; § 131 p. 124 n. 67, p. 125 n. 70 New; § 132 p. 125 n. 71; Evidence, 22 C. J. § 545 p. 455 n. 74.

In District Court, Adams County, *Lembke,* J.

Proceeding upon appeal from decision of compensation bureau to determine the right and the award of a claimant.

The bureau has appealed from a judgment in claimant's favor.

Judgment modified and proceedings remanded.

*C. A. Marr, L. J. Wehe, Phillip Elliot,* and *M. E. Remmen,* for appellant.

". . . Claimant walking along this dark passageway, miscalculated his distance, stepped forward and upon the upper end of the incline, and fell forward, because of the comparatively abrupt decline. But, whatever may have been the details of the fall, there is no question that the claimant fell, and there is no doubt that the right femur was broken at the extreme lower end; but the conclusion that this comparatively simple fracture 'necessitated the amputation of his right leg at or about the middle of the thigh' some inches above the fracture, is not sustained by the evidence, and this is the material question in the case. . . . Upon his being taken to the Roosevelt Hospital it was found that he had a osteosarcoma, popularly known as cancer of the bone, at the point of the fracture, and there is no dispute in the evidence that the amputation was made, not because of the fracture but because of the disease. Dr. Gillespie testified, and there was no contradiction, that there was no visible injury to the outside of the leg that he could find, and that 'the leg was amputated because the growth was malignant;' that if the accident had occurred, as described, and there had been no sarcoma at that point, no amputation would have been necessary. The diagnosis was made immediately after the accident, and the operation took place within eight days of the diagnosis and the undisputed evidence is to the effect that the operation was for the purpose of curing the diseased condition of the leg, not because of the fracture. Indeed, the fair inference from the evidence is that the fracture was the result of the disease rather than of the accident, though it was inferentially admitted that the false step hastened the break. But the loss of the leg was clearly due to the diseased condition. . . . It is not shown that the claimant was bruised in any way . . . to charge this disease to the industry, simply because it became manifest by reason of this the Workmen's Compensation Law, which sought to insure against inherent risks of certain classes of industry." Brady v. Holbrook, Cabot & Rollins Corporation, 178 N. Y. Supp. 504.

"It devolved upon the plaintiff to establish the fact that the deceased was not only injured in the manner claimed, but to produce evidence to show that he was injured by an accident that arose out of and in the course of his employment by the defendant. The law does not require that the case shall be established by direct evidence; circumstantial evi-

dence is sufficient. But the circumstantial evidence must be such as would justify an inference that the injury was due to an accident arising out of and in the course of the employment, and must not be left to speculation or conjecture.

The rule is that for statements of an injured person to be admissible in evidence, they must be shown to have been made at a point of time so close to the alleged injury as to be entirely spontaneous." Mayeur v. Crowe Coal & Min. Co. (Kan.) 186 Pac. 1035; Storm v. Thompson (Iowa) 170 N. W. 403; Smith v. State Workmen's Ins. Fund (Penn.) 105 Atl. 90; Meredosin Levee & Drainage Dist. v. Indus. Commission of Ill. (Ill.) 120 N. E. 516; Litts v. Risley Lumber Co. (N. Y.) 120 N. E. 730; Woodhall v. Irwin (Mich.) 167 N. W. 845; Parsons v. Ind. Accident Comm. (Cal.) 173 Pac. 585; Hungerford v. Bonn (N. Y.) 171 N. Y. Supp. 280; Pace v. Appanoose County (Iowa) 168 N. W. 916; Battey v. Osborne (Conn.) 115 Atl. Rep. 83.

Patten Hotel Co. v. Milner (Tenn.) 238 S. W. 75; Spring Canyon Coal Co. v. Ind. Comm. (Utah) 201 Pac. 173; Hunt v. Ind. Ac. Comm. of Cal. 185 Pac. 215; Central Locomotive & Car Works v. Ind. Comm. (Ill.) 125 N. E. 369; Pocardi v. Ott (W. Va.) 98 S. E. 69; Ohio Oil Co. v. Ind. Comm. (Ill.) 127 N. E. 744; Dochoff v. Globe Const. Co. (Mich.) 180 N. W. 414; Lingley v. T. Firth & Sons (Eng.) W. C. Ins. Rep. 6 Edw. 7.

"Plaintiff began to unload a car of coal for defendant February 21, 1920, and finished the task the next day. He began to unload another car February 23d, 1920, and was injured the following day before he had removed all of the coal. For these services he was paid $20 by check of defendant being 25c a ton. About a week earlier plaintiff had unloaded a car of coal for defendant in the same yards. During a year's time previously he had unloaded three or four cars and received 25c a ton. He was entitled to his pay when he unloaded a car and could then get it if he could find defendant's manager at the time. Plaintiff in each instance was employed to unload a particular car of coal. Between jobs he sometimes stayed around defendant's yards, and when a car of coal came in he asked for the unloading, was told the price and performed the service, but during some of the intervals he had worked for others." Bridger v. Lincoln Feed & Fuel Co. (Neb.) 179 N. W. 1020.

"Where the employment for one job cannot be characterized as permanent or periodically regular but occurs by chance, or with the intention and understanding on the part of both employer and employee that it shall not be continuous, it is casual. . . . The work he was to assist in doing was a particular and certain piece of work, which both he and his employer knew would require but a short time. There was nothing in the contract of employment nor in the relations of these parties, then or prior to that time, shown by the evidence, which would indicate that such employment was to be either continuous or recurring." Consumers Mutual Oil Producing Co. v. Indus. Commission, 289 Ill. 423, 124 N. E. 608; Aurora Brewing Co. v. Industrial Board of Ill. 115 N. E. 207; Holbrook v. Olympia Hotel Co. (Mich.) 166 N. W. 876.

*F. M. Jackson,* for respondent.

"A contention that the amount of an original award under the Workmen's Compensation Law fixed the weekly compensation too high a rate cannot be considered upon certiorari where not urged before the board in hearing." Byle v. Grand Rapids Co. (Mich.) 175 N. W. 416.

"It would be manifestly unjust to permit the case to turn upon a contention not raised at the trial and to which evidence was not directed." Doff's Case (Mass.) 125 N. E. 145.

"Counsel for the plaintiff in error further argues that the industrial board did not have jurisdiction of the proceedings because the record does not show that any notice was given to the employer within thirty days after the happening of the accident nor was any claim for compensation made within six months." Starrs v. Industrial Commission, 121 N. E. 267.

"We think it clear that on this record the plaintiff in error waived the right to raise any question of jurisdiction." American Mill Co. v. Industrial Board (Ill.) 117 N. E. 147.

The law was primarily intended for the protection and benefit of employees and its beneficent purpose should not be defeated by a strict or technical construction that would deprive the employee of compensation to which he would be clearly entitled without contest if he had prosecuted his claim with diligence." Bates & Rogers v. Allen (Ky.) 210 S. W. 467.

"It should not be overlooked that the act, and acts in different states, are universally considered as of a remedial character, the provisions of

which should be construed broadly and liberally in order to effectuate their purpose." Donahue v. Sherman (R. I.) 98 Atl. 109.

The act is to be construed in the light of its purpose, and so far as reasonably may be, to promote the accomplishment of its beneficent purpose. See also Young v. Duncan (Mass.) 106 N. E. 1; Dixon v. Russell (Wis.) 145 N. W. 762; Christopherson v. C. M. & St. P. Ry. Co. (Ia.) 109 N. W. 1077; Keys v. Cedar Falls (Iowa) 78 N. W. 227; Spevack v. Coaldale Fuel Co. (Iowa) 131 N. W. 654; Duffey v. Consolidated Block Co. (Minn.) 124 N. W. 609.

"Complaints of existing pain at a time long subsequent to the date of the injury" held admissible. Ward v. Ætna L. Ins. Co. (Neb.) 118 N. W. 70; Elby v. Ins. Co. 102 Atl. 209; Western Ass'n v. Munson (Neb.) 103 N. W. 688; St. L. S. W. Ry. Co. v. Moore, 173 S. W. 904; Schock v. Cooling, 141 N. W. 675; Britton v. Washington Water Power Co. 110 Pac. 20.

In last case declarations made eight days after accident were admitted. Kansas City S. Ry. Co. v. Clinton, 224 Fed. 897; Johnson v. State, 129 Wis. 146, 108 N. W. 897; Andrzejewski v. Northwestern Fuel Co. (Wis.) 148 N. W. 37; Puls v. Grand Lodge, etc. 13 N. D. 559; Ins. Co. v. Mosley, 75 U. S. 397; First Nat. Bank v. Indus. Commission (Wis.) 154 N. W. 847; Murphy v. George Brown Co. (N. J.) 103 Atl. 28; Southwestern etc. Co. v. Owen (Tex.) 198 S. W. 662; Patterson v. Ocean Accident Co. 25 App. D. C. 46; Starr v. Aetna Life Ins. Co. 83 Pac. 113; Vicksburg Railroad Co. v. O'Brien, 119 U. S. 99; Wigmore, Ev. § 1750; Mitchum v. State, 11 Ga. 625; Carr v. State, 43 Ark. 104; Travelers' Ins. Co. v. Sheppard, 85 Ga. 751; Retmier v. Cruse (Ind.) 119 N. E. 32; Van Keuren v. Dwight Devine & Sons, 165 N. Y. Supp. 1049; See cases cited in 15 N. C. C. A. 632; 17 N. C. C. A. 864; Schroetke v Jackson-Church, 193 Mich. 615; Indian Creek Coal Co. v. Calvert (Ind.) 119 N. E. 519.

In Utah Copper Co. v. Industrial Commission (Utah) 193 Pac. 25, under a statute excepting persons, "Where employment is but casual or not in the usual course," etc., the court held that the employment was not "casual" under the following facts.

The attention of the court is also called to the following cases on casual employment: (Ind.) 123 N. E. 120; (Colo.) 191 Pac. 125; (Ill.) 119 N. E. 902.

"We are of the opinion that the test of relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent." Tuttle v. Embury Martin Lumber Co. 192 Mich. 385, 158 N. W. 875.

Bronson, Ch. J. This is a proceeding under the Workmen's Compensation Act by a claimant against the bureau. The bureau has appealed from a judgment of the district court in claimant's favor.

The facts are: The claimant is the widow of Frank Gotchy, deceased. There are four dependent children aged, respectively, six, eight, twelve, and fifteen years. For many years the deceased was a carpenter. He resided with his family on a farm about two miles distant from Reeder, North Dakota. The Reeder Co-operative Equity Exchange, a corporation, has maintained at Reeder for many years an elevator. There it is engaged in the general business of handling grain, flour, feed, and coal. For several years the deceased had worked for this exchange as a carpenter whenever his services were required, in doing repair work or in construction. About August, 1919, the exchange desired and determined to install a new leg in its elevator for purposes of facilitating the handling of grain. The deceased was employed by the exchange as a carpenter to do the work of construction. In August and September, 1919, he was thus employed. In doing this work he received some assistance from the secretary of the exchange and the son of the secretary. In making this construction it was necessary for work to be done underneath the elevator at the bottom of a bin. Access was secured through a hole in the floor and down a ladder. Proximate to the place there was an iron pulley about 2½ feet in diameter which was used in the operation of the elevator. No witnesses specifically saw any injury happen to the deceased; but, on September 4th, 1919, as he came up from this hole, he made the statement to the manager of the elevator, while rubbing his head like one who had bumped his head and while he appeared at that time to be in pain, that he had nearly "broke" his head; that his head was hit against this big pulley. When he returned from work that day he complained to his wife that he had been hurt and was struck on the head by a timber or pulley at the elevator. He complained of terrible pains in the back part of his head and of dizziness. His head

was tilted slightly forward. He acted like a sick man. His wife called the doctor over the telephone and applied home remedies. The next morning the deceased got up at 5:00 A. M. complained of headache and of being dizzy. Often he would hold his head with his hand. He returned to his work but came back that morning. He showed a lack of appetite and acted in an unnatural way, sitting down and holding his head in his hands. During the morning of September 15th, he met the secretary of the exchange in the driveway and complained to him that he nearly knocked off his head yesterday; that, as he was coming up from the first floor, he struck his head on the pulley. The wife testified that, up to that time, he had never been sick a day since she had known him and always had been in the best of health. On the second day he went back to the elevator and tried to do some work for a time. Then, during that day, he went to a local doctor in company with his wife. He was examined. He was given a prescription. Thence the doctor visited him at various times. He continued to suffer from severe headaches. Opiates were given to relieve the pain. The symptoms indicated irritation in the brain tissue or a lesion in the brain. Various tests were made. The patient became more or less comatose and physically wasted away. Finally he was taken to a hospital in Minneapolis for an operation. He was there about three weeks. There, in November, 1919, an operation was performed upon his skull. A piece of bone was removed. This relieved the pressure on the brain. Little relief resulted. The patient returned on November 29th, 1919. Gradually he became weaker; the coma became more pronounced. Finally, he died on February 10th, 1920. The local doctor removed his brain and sent the same to a pathologist and bacteriologist, a doctor at the University of North Dakota. This doctor made an examination. His testimony is to the following effect: In the back part of the cerebrum, on the right side, about the middle of the brain in the lateral ventricle there was a tumor, designated as glioma. The large blood vessel ascending had passed this growth and in that portion of its course an old blood clot was found. The cause of the clot was rupture of a blood vessel. The cause of the hemorrhage was a weakened wall of a blood vessel together with some external violence which would raise the pressure and thus cause the weakened wall to break. The secondary cause of death was cerebral hemorrhage. This tumor had grown around the artery and had weak·

ened the walls of the artery. It was quite possible that external violence resulted in the hemorrhage. It might have caused the rupture: His experience had taught him that a hemorrhage such as occurred is due primarily to an injury; that possibly the deceased might have lived throughout his life without a rupture occurring until some excitement or something raised the pressure so as to induce a rupture. How long this tumor had existed he could not state; whether six months or two years. His opinion was that the rupture of the blood vessel was probably occasioned by external violence. The local doctor who removed the brain found an adhesion of the scalp to the cranium bone on the right side about 3½ inches back, at right angles from the lobe of the ear. It was his opinion that the direct cause of the death of the deceased was hemorrhage superimposed by external violence. Further, he testified that a glioma is a malignant tumor of the brain tissue, cancerous in its nature; that best medical authorities assume that it is due either to chemical or physical irritation.

Another doctor testified to the following effect: He made a puncture of the spinal column. Upon examination the fluid therefrom disclosed intercranial pressure. A glioma is a tumor of rapid or slow growth. Under irritation it may become malignant and rapid in growth; without irritation it may be of very slow growth. It might come from application of violence without, and a blow on the head might produce such a condition; a violent blow some four or five months prior to the death of the deceased might have produced the exact condition that the pathologist at the university described. In all probability the hemorrhage of the deceased's brain was superinduced by external violence although otherwise he admitted that a tumor like glioma might spontaneously produce a hemorrhage.

Another doctor, a witness for the defense, testified to the following effect: His diagnosis could not be stated definitely; symptoms indicated hemorrhage of brain. This might result from a multitude of causes. The blood clot might have resulted from the hemorrhage caused by the glioma. He could not express any opinion as to the cause of the death. Glioma is not always caused by external violence. Real causes of tumors are unknown. Assuming that there had been violence, and assuming the symptoms described, violence might have been the proximate cause of the deceased's death.

On October 29th, 1920, the widow presented to the bureau a claim for compensation accompanied by a certificate of the exchange to the effect that the deceased had been an employee of the undersigned. On November 13th, 1920, the bureau made findings of dismissal without prejudice for the reason that the death of the deceased was not due to injury sustained in the course of employment. Within thirty days thereafter, the widow appealed to the district court from this decision of the bureau. On February 1st, 1921, the bureau, in response to a letter from claimant's counsel, gave advice concerning a rehearing before the bureau. The board stated it had no desire to take advantage of any technical points in regard to this claim. On March 21st, 1921, it likewise wrote claimant's counsel, to the effect that the bureau had denied motion for rehearing by the bureau; that this was a case which should go to the district court for decision and the bureau was willing to give any assistance in bringing the matter before the district court as there was no desire on the bureau's part to defeat claimant's rights, if, as a matter of fact, she was entitled to compensation. In the district court, the bureau first interposed a general denial to the petition of the claimant. At the trial, the bureau sought to amend its answer by averring that the claim was not filed within the time prescribed by the Compensation Act. The trial court refused this amendment. Upon motion made, however, the trial court did permit the bureau to amend its answer by averring that the employment of the deceased was casual and was not in the course of the trade or business of the Reeder Co-operative Equity Exchange. Trial was had in January, 1922.

In the evidence it appears that this exchange had paid a premium to the bureau and that its employees accordingly were insured under the act. But, in its returns, the exchange did not name the deceased as an employee nor make any return of moneys paid him in estimating or stating its payroll. The secretary of the exchange, however, thinks that, in the Federal income report, the exchange included the cost of operation, the expense, and the entire payroll, including amounts paid the deceased. In 1915 the deceased had constructed an enlargement of the office. In 1917, he built or put in a hopper scale. In 1919, when constructing this leg, he also put a new floor in the cupola, repaired the driveway and enlarged the pit or pan. The board of directors hired the deceased. The board had the right to discharge him if his services

were not satisfactory. There was an understanding between him and the president that if he could not do the work the right way, he would let the board of directors decide what to do. The deceased kept his own time; he was honest. On September 13th, 1919, the secretary paid him some $444 for work at $1 per hour. Until the deceased died, the exchange had employed no other carpenter for their repair or construction work. After or about the time of the completion of this work, the deceased also was engaged in doing some repair work for a mercantile company and in superintending the removal of a house for another party.

The trial court found, among other things, that on September 4th, 1919, the deceased was severely injured while working for the exchange and thence grew gradually worse until his death, on February 10th, 1920. That for more than twenty-five years prior thereto he had been in the best of health and was able to work at all times; that on September 4th, 1919, the deceased was working as a carpenter and general repairman for such exchange and had been such regular repairman for more than three years prior thereto; that the deceased died as a result of an injury received in the course of his employment which was covered by insurance under the Compensation Act; that on account of the financial condition of the claimant, their home being mortgaged, it was for the best interests of herself and children that a lump award be made. Such was ordered, including burial expenses, medical and hospital fees, attorney's fees, and costs. Judgment accordingly was entered, on April 6th, 1922, for a total of $10,161.00.

## Issues.

The bureau contends, generally speaking, as follows:—

(1) On the record the claimant has failed to present her claim to the bureau either within the sixty-day limitation or the one-year limitation, as prescribed by the act. That concerning the one-year period, this requirement is jurisdictional; that concerning the sixty-day period, it was essential to show that for reasonable cause the bureau had allowed additional time. That the trial court erred in refusing to permit an amendment of the answer in these respects.

(2) The proof is insufficient to establish that the deceased received

any injury while engaged in the work as alleged. The statements of
the deceased concerning the cause of his injury were hearsay.

(3) The proof is insufficient to show that the death of the deceased
resulted from the blow or injury received.

(4) The deceased was not an employee of the insured employer, reg-
ularly employed in the course of the trade or business of his employer
at the time of the injury.

(5) The trial court erred in awarding a lump sum and in determin-
ing the amount thereof. The trial court should have remanded the case
back to the bureau with instructions to allow compensation according
to law, or it should have entered the judgment for weekly payments
pursuant to the Act.

## Decision.

*Method of Procedure:* At the trial the parties stipulated that the
cause be tried to the court without a jury under the so-termed "Newman
Law" and that all evidence offered be received by the trial court without
ruling. Thus was the cause heard and the evidence received. It is
necessary to repeat, as this court has heretofore held, that in any case
tried under the amended so-termed Newman Law, Laws 1919, chap. 8,
it is the duty of the trial court, where objection is made, to rule upon
evidence offered. People's State Bank v. Steenson, ante, 100, 190 N.
W. 75.

Upon an appeal from the decision of the bureau, by a claimant upon
the fund, what procedure is applicable?

The Compensation Act grants to the bureau "full power and author-
ity to allow and determine all questions within its jurisdiction, and its
decision thereon shall be final." Laws 1919, § 17, chap. 162. Other-
wise, it provides, in case the final action of the bureau denies the right
of the claimant to participation at all in the fund: (1) On the ground
that the injury was self-inflicted, or, (2) On the ground that the acci-
dent did not arise in the course of employment, or, (3) Upon any other
ground going to the basis of claimant's right, that the claimant, by filing
an appeal in the district court may be entitled to a trial in the ordinary
way; that, in such a proceeding the state's attorney shall represent the
bureau; that the claimant shall file a petition in the ordinary form

against the bureau as defendant; that further proceedings shall be had, in such case, according to the rules of civil procedure that the court shall determine the right of the claimant; and, if it determines the right in his favor, shall fix his compensation within the limitations prescribed in the act; that the cost of such proceeding, including reasonable attorney's fees to the claimant's attorney to be fixed by the trial judge, shall be taxed against the unsuccessful party; that either party shall have the right to prescribe error as in the ordinary civil cases. Laws 1919, § 17, chap. 162.

It may be observed that the statute accords the right of appeal from a decision of the board upon certain designated grounds. To the court is accorded the right to determine the right of the claimant and the amount of his compensation. The right is purely statutory. The judicial cause thus prescribed is a statutory proceeding. The statute, in terms, does not class the cause as a civil action nor accord the right of trial by jury. Otherwise, it must be remembered that the Compensation Act provides that all civil actions and civil causes of action and all jurisdiction of courts of this state over such causes are abolished except as in the act provided. Laws 1919, chap 162. However, the act provides in certain respects that an employer who fails to furnish a statement or certain information shall be liable *in a civil action* to a certain penalty. Section 5: That any employer who wilfully misrepresents the amount of the payroll shall be subjected to a multiplied premium *in a civil action*. Sec. 5, H: That in case of default in payment of premium by an employer it is a duty of the attorney general to bring *a civil action* against such employer. Sec. 8: That an employer who is not complying with the act shall be liable to their employees, etc., and in such *action* certain common-law defenses shall not be available to them. Sec. 10: That an employee, where the employer has not complied with the act, may, in lieu of proceedings against his employer, *by civil action,* file application with the bureau, etc. § 11.

An action is an ordinary proceeding in a court of justice, etc. Comp. Laws, 1913, § 7330. Every other remedy is a special proceeding. Comp. Laws, 1913, § 7331. Hence, mandamus is not triable de novo. State ex rel. Bickford v. Fabrick, 16 N. D. 96, 112 N. W. 74. So contempt proceedings are special proceedings. Noble Twp. v. Aasen, 10 N. D. 264, 86 N. W. 742. Likewise disbarment proceedings. Re Eaton,

7 N. D. 269, 272, 74 N. W. 870. It is apparent that this is not an ordinary proceeding; that the act has not specifically classified it as a civil action although otherwise it has mentioned proceedings to be taken for enforcement of the act through civil actions. Easily might the legislature have so prescribed if it so desired.

Accordingly, we are of the opinion that this appeal is a special proceeding pursuant to the Compensation Act; that it is not triable de novo upon appeal to this court.

The findings of the trial court, therefore, are presumed to be correct unless clearly opposed to the preponderance of the evidence. Richards v. Northern P. R. Co. 42 N. D. 472, 478, 173 N. W. 778; Stavens v. National Elevator Co. 36 N. D. 9, 161 N. W. 558; McLennan v. Plummer, 34 N. D. 269, 158 N. W. 269; State Bank v. Maier, 34 N. D. 259, 158 N. W. 346; McCormick v. Union Farmers State Bank, 48 N. D. 834, 187 N. W. 422.

*Presentation of Claim:* The Compensation Act provides that all original claims for compensation for disability or death shall be made within sixty days of injury or death; for any reasonable cause shown, the bureau may allow original claims for compensation for disability or death to be made at any time within one year. The claim involved was not filed within the sixty-day period but was filed with the bureau within one year after the death of deceased. The bureau, concerning this claim, permitted it to be filed, acted upon it, and denied it, only for the reason that the death of the deceased was not due to injury sustained in the course of employment. We are satisfied that the opinion of the bureau concerning the filing of the claim, upon this record, is without merit.

*Sufficiency of Proof that Deceased Received any Injury:* The means or method by which the deceased was injured externally does not appear by direct evidence. His declarations establish that he received a blow more or less violent by his head coming in contact with an iron pulley. The fact of the injury is established by his subsequent conduct and by evidence of the local doctor of a slight swelling on the scalp, sensitive to the touch. Whether this resultant condition was due to a latent glioma or was caused or superinduced by external violence was a question of fact. Under the circumstances, we are of the opinion that the declarations made to the manager, as a part of the res gestæ, were admis-

sible. Puls v. Grand Lodge, A. O. U. W. 13 N. D. 559, 572, 102 N. W. 165. It is certain in this record that the deceased appeared well and healthy before he was at work in this place under the elevator and that after he emerged therefrom his condition changed and thereafter he became and remained ill, until his death.

*Sufficiency of Proof that Death Resulted from Injury Received:* The fact that the deceased had a tumor designated as glioma is established. Also that this tumor serves to weaken arterial or blood vessels, whereby hemorrhages might occur and induce mortality. The doctors do not know how long this tumor may have existed. From the testimony of the doctors it does not appear probable that the blow received occasioned the glioma; yet, from their testimony, this glioma might have remained latent for an indefinite period, perhaps throughout decedent's ordinary life, and might have become malignant only through some external stress. All of them seem to agree that external violence might be a superinducing cause that occasioned the hemorrhage. Three of them testified to the effect that, pursuant to the symptoms, the diagnosis, and the previous history of the deceased, their opinion was that the hemorrhage was occasioned by external violence. In accordance with the testimony of the doctors, medical science is uncertain concerning the causes of this glioma. There is no violent disagreement among the doctors. All agree that it was either possible or probable that external violence was a superinducing cause of the hemorrhage. The record reveals that previously the deceased had been an active, healthy man. From his activities and his appearance, even his brain, excepting as the brain was exposed by microscopic examination, appeared to be a normal brain. Neither the record nor medical science, as afforded in the record, disclosed that this glioma was the efficient or the producing cause of the deceased's death. He received an injury; he became ill; and this illness progressed unto his death. The cause of his death could have been, and probably was, pursuant to the testimony of some of the doctors, the resulting and proximate effect of the injury received. Retmier v. Cruse, 67 Ind. App. 192, 119 N. E. 32; Indian Creek Coal & Min. Co. v. Calvert, 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709; note in L.R.A.1917D, 105. See § 3, chap. 162, Laws 1919; Laws 1921, chap. 141; Gilliland v. Ash Grove Lime & Portland Cement Co. 104

Kan. 771, 180 Pac. 793; Blackburn v. Coffeyville Vitrified Brick & Tile Co. 107 Kan. 722, 193 Pac. 351.

*The Employment of the Deceased:* The bureau earnestly maintains that the deceased was a contractor, not an employee; that he was carrying on an independent business in accordance with his own methods; that his relations with the exchange was that of a contractor and not as a servant. Under the Compensation Act, hazardous employment means any employment in which one or more employees are regularly employed in the same business. An employee means each person engaged in a hazardous employment under any appointment or contract of hire, but excluding any person whose employment is both casual and not in the course of the trade or business of his employer, etc. Laws 1919, § 2, chap. 162. State ex rel. Amerland v. Hagan, 44 N. D. 306, 175 N. W. 372, 375. Was the deceased an employee under this definitional statement? The record sufficiently discloses that the deceased was regularly employed as general repair man for the exchange. His employment, it is true, was intermittent; he was a carpenter: But, he worked regularly for the exchange whenever the exchange had carpenter work to do. At the time in question, the deceased had been engaged in this work for the exchange for a period of over forty days: He was performing work necessary in the conduct of the business of the exchange. He was paid by the hour. He received a check from the exchange for over $440. The manner of his work, the method of his pay, his general relations with the exchange, taken in conjunction with the assistance he received from other employees of the exchange, served to indicate that he was serving as an employee subject to the wishes and control of his employer. We are satisfied that the findings of the trial court should not be disturbed and that the evidence does not establish, as a matter of law, that the employment of the deceased was both casual and not in the course of the trade or business of the exchange, his employer. See Caca v. Woodruff, 70 Ind. App. 93, 123 N. E. 120; Tarr v. Heclar Coal & Coke Co. 265 Pa. 519, 109 Atl. 224; Utah Copper Co. v. Industrial Commission, 57 Utah, 118, 13 A.L.R. 1367, 193 Pac. 24; F. C. Gross & Bros. Co. v. Industrial Commission, 167 Wis. 612, 167 N. W. 809.

*An Award in a Lump Sum:* The bureau maintains that the power to make an award is conferred alone upon the bureau. The legislative

intent, of course, must be gleaned from the language of the act and the underlying purposes for which it was enacted. The act has incorporated provisions from many foreign acts and states. It is difficult, accordingly, to apply judicial interpretations of similar provisions in foreign jurisdictions, upon this act, peculiarly, in some respects, sui generis.

The act provides that, in case of death, or of permanent total, or of permanent partial disability, and if the bureau determines that it is for the best interest of the beneficiary, the liability for compensation to such beneficiary may be discharged by the payment of a lump sum. Sec. 3, H, chap. 141, Laws 1921 (Laws 1919, chap. 162). Otherwise, the act provides that compensation to a widow shall be paid until her marriage or death; compensation for a dependent child, until such child dies, marries, or reaches the age of eighteen years. § 3, G. A maximum is fixed for the compensation to be paid weekly. § 3, G. The conditional factors may be noted. Again, the act empowers the bureau, at any time, upon its own motion or on application, to review the award, and in accordance with the facts found on such review, to end, diminish, or increase the compensation previously awarded, or, if compensation has been refused, or discontinued, to award compensation. § 18. When an appeal is taken from the decision of the bureau, the court is empowered to determine two things: "The right of the claimant, and, if established, the fixing of the compensation within the limits prescribed in the act." § 17. This right of appeal, as may be noted, is limited. No right of appeal is granted from the recognition or allowance of a claim, or from the amount of an award made by the Bureau. In such cases, its determination is final. Otherwise, except as this limited right of appeal permits, the bureau has full power and authority to hear and determine finally all questions within its jurisdiction. § 17. The underlying purpose of the act is denominated to be the protection of injured workmen, their families and dependents and the provision of sure and certain relief; to that end all jurisdiction of the courts over personal injuries sustained by employees is abolished except as provided in the act. § 1. To accomplish these ends, a weekly method of disbursement is provided. § 2E, F, et seq. Protection is given to such compensation by rendering all assignments thereof void and by exemption of the same from all claims of creditors. § 22. The duty is imposed upon the bureau to collect, administer, and disburse the "fund."

To it, a large discretion is awarded. Its process and procedure is summary and simple: It is not bound by common law or statutory rules of evidence, nor generally by technical rules of procedure: It may make investigation in such manner as, in its own judgment, may be best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the act. § 3E. It thus has a continuing obligation and a continuing duty, after, as well as before, an award is made. This is properly so, in view of the conditional factors involved in an award. If the judgment of the court upon the amount of an award is the final and ultimate judgment, then, whenever an appeal is taken, this continuing duty and obligation of the bureau, concerning that claim and the award thereupon, is to that extent, abrogated. If the award in such case by the court is a lump sum, then the express power of discretion to so do is transferred from the Bureau to the Court, and the discretion of the bureau, as well as its continuing obligation and duty is thereafter abrogated. If every judgment of the court upon the amount of an award is thus final and ultimate, the court must reserve unto itself, a portion of this discretion and power granted to the bureau for the determination of the conditional factors, as they come into existence, and of increasing or decreasing the award, or, must deny and abrogate this discretion intended by the act to be exercised by the bureau. To make such constructions and interpretations of the Act would not be consonant with the underlying purposes of the act, and the continuing obligations, duties, powers, and discretions conferred, and intended to be conferred, upon the bureau.

Accordingly, we are of the opinion, that upon an appeal from the decision of the bureau, the court has the power to determine the right of the claimant and to fix the compensation within the limits prescribed in the act; that, after the determination of such right and of the compensation, the continuing obligations and duties of the bureau remain applicable in administering the right and in disbursing the compensation, pursuant to the act and pursuant to the powers and authority conferred upon the bureau. Further, that the express power to make a lump award, or to ascertain its necessity, is not conferred upon the court, and therefore, is not possessed. This does not mean that the bureau would possess, after such judgment, the right to deny or reverse the right of the claimant thus established upon appeal, but it does mean

that the bureau, after such judgment, may increase or diminish the award, or may award a lump sum, all pursuant to and consistent with the judgment rendered and the continuing obligations and duties imposed upon the bureau. It follows that the judgment must be modified so as to be consonant with this opinion. It is so ordered with costs of this court to the respondent.

CHRISTIANSON, JOHNSON, NUESSLE, and BIRDZELL, JJ., concur.